AQUA-TECH, INC., a Wisconsin corporation, Appellant, v. COMO LAKE PROTECTION & REHABILITATION DISTRICT, and another, Respondents.

*No. 75–309. Argued February 3, 1976.—Decided March 2, 1976.*
(Also reported in 239 N. W. 2d 25.)

542

For the appellant there was a brief by *J. Curtis Mc-Kay* and *McKay, Martin & Kranitz* of Cedarburg, and oral argument by *J. Curtis McKay.*

For the respondents there was a brief by *William L. Seymour* and *Lehman & Seymour* of Elkhorn, and oral argument by *William L. Seymour.*

BEILFUSS, J. The defendant district was organized under the provisions of ch. 33, Stats., which authorizes the creation of Lake Protection Districts for the purpose of undertaking programs of lake protection and rehabilitation. In May of 1975, the district circulated an invitation for sealed bids to conduct the Como Lake Feasibility Study. The bid specifications included the following condition: "Financial status and professional qualifications of Bidder will be carefully considered. Como Lake District reserves the right to reject any or all bids, to waive any irregularities, or to accept any bid which in the judgment of the District may be most advantageous to it." The bids were opened on June 6, 1975, and by a letter dated June 10, 1975, the district informed Aqua-Tech that it had submitted the low bid on the project. However, the district also informed Aqua-Tech that another bidder had subsequently agreed to buy back some equipment upon the termination of the study and that this arrangement resulted in the second party being low bidder. As a result, the district intended to award the contract to that party.

Aqua-Tech informed the district that it felt entitled to the contract as low bidder pursuant to sec. 33.22 (1), Stats., which provides:

"**District; powers.** (1) Any district organized under this chapter may sue and be sued, make contracts, accept

gifts, purchase, lease, devise or otherwise acquire, hold or dispose of real or personal property, disburse money, contract debt and do such other acts as are necessary to carry out a program of lake protection and rehabilitation. All contracts for the performance of any work or the purchase of any materials, exceeding $500, shall be let by the commissioners to the lowest responsible bidder in such manner as they prescribe."

The district refused to make the award as requested and Aqua-Tech filed its original summons and complaint on July 18, 1975, in the circuit court for Walworth county. At the same time, Aqua-Tech obtained an ex parte restraining order prohibiting the district from awarding the contract pending a hearing scheduled for July 29, 1975, on an order to show cause why a temporary injunction should not be issued pending a disposition on the merits. The district filed its demurrer to the complaint on August 1, 1975.

On August 5, 1975, the circuit court filed its decision denying Aqua-Tech's request for a temporary injunction and vacating the restraining order. The court concluded that Aqua-Tech had failed to show "a reasonable probability of ultimate success upon the trial on the merits." Aqua-Tech immediately appealed and sought a stay of the court's order vacating the temporary restraining order and of all proceedings on the merits pending the outcome of the appeal. Following the circuit court's denial of the stay, this court entered an order granting the stay on August 27, 1975.

The broad question on this appeal is whether the circuit court should have granted Aqua-Tech's application for a temporary injunction. As a general rule, the granting or withholding of a temporary injunction lies within the sound discretion of the trial court and the sole question on appeal is whether that discretion has been abused.[1]

[1] See: Pure Milk Products Coop. v. NFO (1974), 64 Wis. 2d 241, 219 N. W. 2d 564; Codept, Inc. v. More-Way North Corp.

In refusing to issue a temporary injunction in this case, the circuit court concluded that there was not a "reasonable probability of ultimate success" on Aqua-Tech's underlying claim because it appeared that the contract in question was exempt from the statutory bid requirement. In so holding, the court relied on the principle, recognized and followed in this state, that contracts for the performance of services requiring scientific knowledge and professional skill do not call for the performance of "work" which must be submitted to competitive bidding.[2] This exception has been engrafted onto bid statutes by judicial construction on the theory that public bodies should be free to judge the professional qualifications of those who are to perform such services.

In support of its contention that the circuit court abused its discretion, Aqua-Tech contends that the work to be performed under the Como Lake Feasibility Study is not, as a matter of law, of the type which would exempt the contract from the bid requirements of sec. 33.22 (1), Stats. The district also argues that the question of whether the contract here involved falls within the stated exception is one of law. However, the district relies on the description of activities contained in the bid specifications, which are a part of the record on this appeal, as conclusive proof that the services called for by the Como Lake Feasibility Study contract are of the type which exempt that contract from the bid statute.

A review of the circuit court's decision demonstrates that it did not make a final determination on this issue and this court should not make such a determination on the record as it now exists. Both parties should have

(1964), 23 Wis. 2d 165, 127 N. W. 2d 29; *Culligan, Inc. v. Rheaume* (1955), 269 Wis. 242, 68 N. W. 2d 810.

[2] *See: Flottum v. Cumberland* (1940), 234 Wis. 654, 291 N. W. 777; 1A Antieau, *Municipal Corporation Law*, pp. 757–760, sec. 10.28.

the opportunity to present more evidence on the matter. However, the current record, when viewed in light of the applicable statutes, does not support the circuit court's conclusion that the contract for the Como Lake Feasibility Study is probably exempt from the competitive bidding statute.

A review of the relevant statutes lends support for the proposition that the legislature intended that contracts for the undertaking of feasibility studies be subject to the statutory bid requirement. Sec. 33.22 (1), Stats., provides that "[a]ll contracts for the performance of any work" shall be let by the district to the lowest responsible bidder. Contracts to conduct feasibility studies are specifically contemplated under the provisions of sec. 33.13. That section refers to the performance of "feasibility study work."

More importantly, the specifications relied on by the district as conclusive proof on the issue do not appear to call for the performance of services of the type which are ordinarily held to warrant exemption from statutory bid requirements. The district argues that the work called for by the feasibility study contract is of a scientific and professional nature. However, it is questionable if those specifications require the making of professional judgments or the exercise of educated discretion which is the heart of the bid requirement exception. A general test to be applied in determining whether a contract is exempt from bidding requirements is whether the nature of the work called for makes it impossible or impractical to draw specifications satisfactorily to permit competitive bidding.[3] The specifications here are extensive and detailed.

---

[3] *See:* 1A Antieau, *Municipal Corporation Law*, p. 759, sec. 10.28.

The entire study is governed by the provisions of sec. 33.13, Stats., and the administrative order pursuant thereto.[4] Under sub. (1), the Department of Natural Resources, and not the contractor, prescribes the data which is to be secured, the methods of analysis and evaluation, and the duration of data gathering. Under subs. (2) and (3), all data gathered in the course of the study is to be forwarded to the department which is to analyze it and formulate suggested alternative methods of lake rehabilitation. The sole function of the contractor is to accumulate prescribed data from defined areas for a specified period of time. The contractor is not required or authorized to evaluate the data or to make recommendations.

The circuit court's decision to deny Aqua-Tech's application for a temporary injunction was based on its determination that the contract in question was "probably" not subject to the statutory bid requirement. As the court noted, if the contract is not subject to statutory bid requirements, the district is not bound to award the contract to the lowest responsible bidder, and even after soliciting bids, may reject any and all bids, ask for new bids, or contract on the basis of reasonable business judgment with one who is not the low bidder.[5] We do not believe the record before the circuit court supported its conclusion that the contract is probably exempt from the bid requirement. The decision to deny the temporary injunction on that ground cannot stand.

Relying on *Menzl v. Milwaukee* (1966), 32 Wis. 2d 266, 145 N. W. 2d 198, the district nevertheless argues that

[4] 6 Wis. Adm. Code, sec. NR 60.

[5] *See: Menzl v. Milwaukee* (1966), 32 Wis. 2d 266, 271, 145 N. W. 2d 198; 10 McQuillin, *Municipal Corporations* (3d ed.), pp. 272–274, sec. 29.31.

the circuit court's order should be affirmed because, as a matter of law, Aqua-Tech cannot prevail on its underlying action. Aqua-Tech, on the other hand, contends that the circuit court abused its discretion in denying the temporary injunction because it failed to consider whether the awarding of the contract to another party would render ineffective a judgment in its favor on the merits.

The principal relief sought by Aqua-Tech in the action is a writ of mandamus compelling the district to award the contract to it as low bidder. In the *Menzl Case,* a contractor sought a writ of mandamus, claiming to be the lowest qualified bidder on a city's towing contract. The petition was denied and the contractor appealed. This court first noted that mandamus is a discretionary writ properly issued to compel the performance of clearly prescribed statutory duties. It is an abuse of discretion, the court held, to compel action through mandamus when the officer's duty is not clear and unequivocal and requires the exercise of discretion. The court stated at page 276:

"The extent to which these principles apply to compel the awarding of contracts depends largely upon the statutory powers and duties of the contracting officer or agency. The general charter law, ch. 62, Stats., that authorizes the award of contracts to the lowest *responsible* bidder (sec. 62.15 (1)) and specifically granting authority to the city to reject all bids (sec. 62.15 (5)), grants a wide discretion to bid letters operating under this statute. It is difficult to conceive of a situation arising under that statute where mandamus would lie."

The concept that statutes conferring a power to let contracts to the lowest responsible bidder imply the exercise of discretion also finds support in other cases in this state. *See: Mueller v. Eau Claire County* (1900),

108 Wis. 304, 84 N. W. 430; *State ex rel. Hron Brothers Co. v. Port Washington* (1953), 265 Wis. 507, 510, 62 N. W. 2d 1.

The cited cases demonstrate a reluctance on the part of the judiciary to interfere with the discretion which is vested in a public bidding authority. This reluctance is based primarily on the principle that statutory bid requirements are intended for the benefit and protection of the public and not of the individual bidder and that the lowest bidder has no fixed, absolute right to the contract.[6] This principle, along with the arguments advanced in *Menzl, supra,* dictate that mandamus is not an available remedy to the low monetary bidder who is not awarded the contract. This does not mean, however, that no avenue of review exists and that the temporary injunction must be denied in this case.

Statutory bidding requirements are designed to prevent fraud, collusion, favoritism and improvidence in the administration of public business, as well as to insure that the public receives the best work or supplies at the most reasonable price practicable.[7] It would be inconsistent with these objectives to deny all means of judicial review. Other jurisdictions have recognized that the exercise of discretion vested in a public body by statute is properly subject to judicial review.[8] That review is generally limited to determining whether the bidding authority

[6] *See: State ex rel. Phelan v. Fond du Lac Board of Education* (1869), 24 Wis. 683, 684; *State ex rel. Hron Brothers Co. v. Port Washington, supra.*

[7] *Blum v. Hillsboro* (1971), 49 Wis. 2d 667, 183 N. W. 2d 47; *Victora v. Muscoda* (1938), 228 Wis. 455, 279 N. W. 663.

[8] *See, e.g.: Centric Corporation v. Barbarossa & Sons, Inc.* (Wyo. 1974), 521 Pac. 2d 874; *City of Phoenix v. Wittman Contracting Co.* (1973), 20 Ariz. App. 1, 509 Pac. 2d 1038; *M. A. Stephen Construction Co. v. Borough of Rumson* (1972), 118 N. J. Super. 523, 288 Atl. 2d 873.

acted in an arbitrary or unreasonable manner in deciding to award the contract to one other than the low monetary bidder. As one author has stated:

". . . 'The determination of the question of who is the lowest responsible bidder does not rest in the exercise of an arbitrary and unlimited discretion, but upon a bona fide judgment, based upon facts tending to support the determination.' . . ." 10 McQuillin, *Municipal Corporations* (3d ed.), pp. 425, 426, sec. 29.73.

A strong argument for judicial review is presented by the facts of this case. Here there is no serious contention that Aqua-Tech is not a "responsible" bidder. It has filed all the bonds required of it and apparently stands ready and capable of performing the work required by the feasibility study contract. Aqua-Tech's primary complaint is that the district based its decision to award the contract to another party on an agreement extraneous to the bidding procedure. It contends that other bidders, including itself, should have been given an equal opportunity to enter a bid based on the repurchase of equipment. Assuming that this contract is determined to be subject to the competitive bidding requirement of sec. 33.22 (1), Stats., the issue to be resolved is more properly whether the district exceeded its statutory authority than whether it abused its discretion.

In addition to mandamus, Aqua-Tech, in its amended complaint, seeks a permanent injunction prohibiting the district from awarding the contract for the Como Lake Feasibility Study to any other party. A judicial review of the district's actions, guided by the general principles outlined above, can effectively be undertaken in the context of this claim for relief. Assuming that the contract is determined to be subject to the statutory bid requirements, a finding that the district abused its discretion or exceeded its authority cannot compel the district to

award the contract to Aqua-Tech because mandamus is not available. However, the district could be enjoined from awarding the contract to the other bidder selected by the district. Under these circumstances the district could award the contract to Aqua-Tech or it could call for new bids.

As Aqua-Tech has pointed out, a temporary injunction prohibiting the district from awarding the contract pending a disposition on the merits of this claim appears to be required to avoid rendering ineffective a possible judgment in Aqua-Tech's favor. The circuit court, relying on *Shearer v. Congdon* (1964), 25 Wis. 2d 663, 131 N. W. 2d 377, considered only whether Aqua-Tech had demonstrated a "reasonable probability of ultimate success" on the merits. Under sec. 268.02 (1), Stats., a temporary injunction may be granted, not only when it appears that the applicant is "entitled to judgment," but also when it appears that the opposing party ". . . is doing or threatens or is about to do . . . some act . . . in violation of the rights of another party and tending to render the judgment ineffectual. . . ." Here the district has made known its intent to award the contract to another party. As Aqua-Tech has pointed out, this court has refused to find an abuse of discretion on the part of a trial court which refused review by certiorari in similar circumstances when the contract had already been let to another party. *State ex rel. Hron Brothers Co. v. Port Washington, supra.* A temporary injunction will avoid the "complicating factor" of having already had the contract awarded to another party and will make judicial review more meaningful.

The final dispute on this appeal concerns Aqua-Tech's standing to challenge the district's action. As was pointed out above, bid statutes are intended primarily for the benefit and protection of the public, and the individual bidder has no fixed, absolute right to the con-

tract.[9] As a result, the low bidder is not ordinarily entitled to mandamus. A taxpayer may challenge the grant of a contract to one other than the low responsible bidder. The district points out that there is no allegation in the complaint that Aqua-Tech is a taxpayer or even that it owns property subject to taxation in the district affected.

The general rule is that a private citizen or individual may sue in his own name and for his own benefit to challenge the violation of a public duty when it appears that he has suffered an injury peculiar to himself which is not sustained by the public in general.[10] Here there can be no doubt that Aqua-Tech, as acknowledged low bidder, will suffer the loss of a business opportunity if the contract is awarded to another party. The complaint alleges a violation of the district's public duty imposed by sec. 33.22 (1), Stats., to let contracts to the lowest responsible bidder. Moreover, a bidder on a public contract is in a particularly good position to challenge the bidding authority's action and thereby protect the rights of the public. The bidder has ordinarily expended time and money in preparing its bid and securing the necessary bonds. It is to be expected that it will zealously protect the interest represented by that expenditure. Further, the bidder is particularly well acquainted with the factual circumstances surrounding the solicitation and evaluation of bids and the eventual awarding of the contract. It is therefore more conversant with the facts than the average citizen to challenge the procedure. For these reasons Aqua-Tech should be allowed to maintain the action for a permanent injunction.

If Aqua-Tech prevails in its action for a permanent injunction, it should be permitted to recover as damages its reasonable and necessary expenditures in preparing

[9] *See: State ex rel. Phelan v. Fond du Lac Board of Education, supra,* footnote 6.

[10] 59 Am. Jur. 2d, *Parties,* p. 385, sec. 30.

its bid, plus the costs of obtaining the bonds required by the specifications, but not its loss of profit.

Upon remand the trial court should grant the temporary injunction and then proceed to hear the action for a permanent injunction when issue is joined. The issues as they now appear are whether the bids in question were within the statutory bidding exception and, if not, whether the district did not follow the statutes or abused its discretion and then, if necessary, the damage issue.

*By the Court.*—Order reversed and cause remanded for further proceedings not inconsistent with this opinion.