**DILLINGHAM CONSTRUCTION, INC., S.A. Healy Company, Grow Tunneling, Corp., and C. Dew & Sons, Inc. d/b/a Dillingham-Healy-Grow-Dew, a Joint Venture, Plaintiffs,**

v.

**MILWAUKEE METROPOLITAN SEWERAGE DISTRICT, Defendant,**

**and**

**Traylor Brothers and Traylor Brothers, Inc./Frontier Kemper Construction, Inc., Intervening Defendants.**

**Civ. A. No. 86–C–177.**

United States District Court, E.D. Wisconsin.

Feb. 21, 1986.

Robert M. Fitzgerald, Lewis, Mitchell & Moore, Vienna, Va., Kenan J. Kersten, Kersten & McKinnon, Milwaukee, Wis., for plaintiffs.

James H. Petersen, Sr. Staff Atty., Milwaukee Metropolitan Sewerage Dist., Milwaukee, Wis., for defendant.

Joseph W. Annakin, Lacey, Terrell, Annakin, Heldi & Baugh, Evansville, Ind., John H. Tracy and Richard A. Maresca, Gadsby & Hannah, Washington, D.C., John D. Finerty and William S. Roush, Jr., Friebert, Finerty & St. John, S.C., Milwaukee, Wis., for intervening defendants.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

Plaintiffs brought this action on February 18, 1986, to prevent the Milwaukee Metropolitan Sewerage District (MMSD) from entering into a construction contract with Traylor Brothers and Traylor Brothers, Inc./Frontier Kemper Construction, Inc., (Traylor). Plaintiffs' bid for the contract in question was rejected by MMSD because Traylor's bid was roughly 2 million dollars lower. Plaintiff claims that Traylor's bid should not have been accepted because Traylor's bid had a blank space where the amount of the required penalty bond should have been inserted. The court has diversity jurisdiction over this action.

Counsel for MMSD has informed the court that after this action was com-

menced, but before the court announced this decision, MMSD awarded the contract to Traylor on February 20, 1986. The court will nonetheless decide the question before it because the court's equity powers would still allow the court to set aside the contract in the event that the court found merit in Dillingham's contention that Traylor was not "the lowest responsible bidder complying with the invitation to bid...." Wis.Stats. § 66.904(2).

The parties agree on the facts. Traylor submitted the low bid for the project but left blank the space in which it was to specify the amount of its penal bond, which bond was required by the bid invitation to be for an amount no less than five percent of the cost of the project. In the event that a low bidder refused to sign a contract with MMSD after being awarded the bid, the surety of the penal bond agrees to pay MMSD the amount of the bond in liquidated damages.

Traylor did execute a bid bond with its surety, and, as is apparently the custom in the trade, the space for the amount of the bond was empty when the surety delivered the bond to Traylor. Traylor failed to write in the amount of the penal sum before submitting its bid. The day after the bids were opened and the omission had become apparent, representatives of Traylor and its surety signed an affidavit stating that the amount of the penal sum should have been five percent and that both Traylor and the surety bound themselves to the terms of the bond. Five days later Traylor and the surety executed a new bid bond for five percent of the contract price and the commission received that the following day.

Despite the defect in Traylor's bid, and after careful consideration of the question, MMSD decided to accept the bid of Traylor. Plaintiff brought this action on February 18, 1986, in an attempt to prevent MMSD from awarding the contract on February 20, 1986.

■ The Seventh Circuit Court of Appeals recently held that a preliminary injunction should be granted "only if the harm to the plaintiff if the injunction is denied, multiplied by the probability that the denial would be error (that the plaintiff, in other words, will win at trial), exceeds the harm to the defendant if the injunction is granted, multiplied by the probability that granting the injunction would be an error." *American Hospital Supply Corp. v. Hospital Products Ltd.*, 780 F.2d 589, 593 (7th Cir.1986). The interest of third parties and the public is to be calculated with the harms to the defendant or the plaintiff, depending on where the public interest lies. *Id.* The inquiry is designed to help "figure out whether granting the injunction would be the error minimizing course of action, which depends on the probability that the plaintiff is in the right and on the costs to the plaintiff, the defendant, or others of granting or denying the injunction." *Id.* at 594.

■ The formula set forth above is designed to minimize the costs of mistake that can result when a judge is forced to act on an incomplete record. *Id.* at 593. That problem does not present itself here because there is no substantial dispute as to the facts and the legal question is ready for decision on the merits. The court finds that MMSD acted within its discretion when it chose to accept the low bid of Traylor despite Traylor's failure to include the sum of its penal bond in the application.

The Wisconsin Supreme Court has explained the reasons for state statutes designed to assure competitive bidding on public works projects.

Public policy considerations operate to restrict the rights of a bidder on a public contract. Competitive bidding requirements were intended for the benefit and protection of the public. They are designed to prevent fraud, collusion, favoritism and improvidence in the administration of public business as well as to insure that the public receives the best work or supplies at the most reasonable price practicable.

*Nelson, Inc. v. Sewerage Commission of Milwaukee*, 72 Wis.2d 400, 408, 241 N.W.2d 390 (1976).

Wis.Stat. § 66.904(2)(c) requires the commission to award the contract "to the person *who it finds is the lowest responsible bidder* complying with the invitation to bid ... unless it rejects all bids or relets the contract." (emphasis supplied). Subsection (3)(a) provides that "[t]he commission *may permit or require* ... a bond *for the benefit of the district* to be filed with any bid or proposal as liquidated damages in an amount that, in the judgment of the commission, *will protect the district* from any loss if the bid is accepted ... and the bidder fails to execute a contract...." (emphasis supplied). Paragraph fourteen of the the Invitation to Bidders stated that "[b]ids must be accompanied by ... a bid bond ... in an amount not less than 5 percent of the total amount of the bid."

The parties agree that Wisconsin law controls but there is no Wisconsin precedent that is on point. Plaintiff contends that Wisconsin would look to federal law and directs the court to two decisions of the Comptroller General, both of which held that, under federal procurement law, failure to state the amount of the penal bond in the bid application renders the bid non-responsive. The defendants argue that the few relevant Wisconsin cases could be interpreted to allow Traylor's bid, that Wisconsin would not necessarily follow the Comptroller, and that other jurisdictions have found that the failure to include the penal sum in the bond is not fatal.

The court has carefully considered the authorities presented and is satisfied that Wisconsin law has not yet answered the question, and that resort to other jurisdictions does not provide a definitive answer. The instant action is rather novel in that here, the losing bidder is asserting the defect as a means to disqualify the winner, whereas the question is normally raised either by a surety who refuses to pay on the bond, or by a bidder who is disqualified for its failure to fill in the blank. This court must determine what the Supreme Court of Wisconsin would decide if faced with this question.

The court is well aware of the special emphasis Wisconsin places upon clean and open government. This concern is reflected in its requirements for letting bids and the fact that the state has for the most part avoided the scandal often associated with public works contracts in other areas of the country. It is of paramount importance that the integrity of the bidding process not be compromised by those entrusted with providing the state's citizens the improvements that public policy and the law command. In interpreting the requirements of the bidding process the court must keep in mind that the procedures "are designed to prevent fraud, collusion, favoritism and improvidence in the administration of public business as well as to insure that the public receives the best work or supplies at the most reasonable price practicable." *Nelson,* 72 Wis.2d at 409, 241 N.W.2d 390.

With these considerations in mind, and after reviewing the facts before it, the court concludes that Traylor's failure to "fill in the blank" was not material and that any error was immediately cured by Traylor after it found out that the error had occured. Dillingham, the plaintiff, seeks declaratory judgment that it should be awarded the contract, but the plaintiff has failed to make any showing whatsoever how it, or the public, was prejudiced by the scrivener's error at issue.

There is no question but that the public has an interest in its officials scrupulously conforming to the letter of the law and their own bid invitations. But here, the mistake was made, and cured, by a third party. Although MMSD is satisfied and desirous of proceeding with construction— being under court order to do so—the plaintiffs want the court to order MMSD to choose plaintiffs' bid, which is roughly two million dollars more than the low bidder.

Plaintiffs argue that the defect was both material and incapable of being cured. Although the penal bond is important, and Traylor's failure to write in the sum on its bid negligent at the least, the court cannot agree that, given the circumstances, it was

material. It is certainly a good idea for MMSD to require a penal bond but it is not required by state law. The question of whether MMSD could have successfully collected from Traylor's surety in this instance is not before the court, although the defendants have made convincing arguments that, given the industry practice and the requirement of a five percent bond, collection would have been allowed even in the absence of a figure.

In any event, the penal bond is for the protection of MMSD and necessary only if MMSD, in its discretion, decides to require one. Here, after the mistake was discovered, MMSD gave Dillingham an opportunity to present its arguments, consulted with its legal counsel, and decided that Traylor's bid was responsive. To allow the losing bidder to hold up construction and prevent Traylor from performing the contract, on the grounds that Traylor forgot to to include the amount of the sum it would pay MMSD in the event it would not sign the contract, would serve neither the interests of the public nor help to assure the integrity of the bidding process.

It might not be a good idea to accept bids without the amount of the penal bond filled in, but the failure of a party to fill in the blank is not so material that that the court is willing to interfere with the award of the sewer contract to the lowest bidder. Plaintiff has not alleged, and there is no indication, that Traylor was given special consideration or some how benefited, financially or otherwise, from its mistake. MMSD did not tell Traylor in advance or after the fact that the requirement of a penal bond did not apply to it. It is not as if Traylor left out the price or failed to meet the requirements of the bid as to quality, quantity, or delivery. The mistake at issue had no effect on the competitive bidding process.

In any event, Traylor immediately cured its mistake after learning of the error. Dillingham's contention that the error was uncurable is based upon its reading of Wis. Stat. § 66.29(5) as the exclusive means of correcting errors. That section allows bidders to cure mistakes in their bids and, in some instances, relieves the surety of their obligation on the penalty bond. Dillingham contends that the *Nelson* case established that the section should not be used to relieve the bidder from the consequences of his own negligent mistakes. Dillingham's argument ignores the fact that that section is "intended primarily for the benefit of the bidder," 72 Wis.2d at 413, 241 N.W.2d 390, and that it is invoked by bidders who seek leave to get out of their commitments and not pay on their penalty bond. Neither Traylor or MMSD seek to avoid their contractual obligations because of mistake.

Here, the opposite is true. The winning bidder who made the mistake, and MMSD, want to perform according to the terms of the contract. The error was immediately cured to the satisfaction of MMSD, who found that Traylor was the lowest responsible bidder. It is the losing bidder who seeks to relieve Traylor from its obligations.

The court finds that, on the facts before it, the failure of Traylor to fill in the amount of the penalty bond was not material and that it was quickly cured by Traylor to the satisfaction of MMSD and this court. Traylor's mistake was not material and MMSD properly exercised its discretion in accepting Traylor's bid. None of the bidders were prejudiced by this series of events and the integrity of the bidding process was never called into question. Plaintiff's motion for a preliminary injunction is denied.

IT IS THEREFORE ORDERED that plaintiffs' motion for a temporary restraining order is denied as moot.

IT IS FURTHER ORDERED that plaintiffs' motion for a preliminary injunction is denied.