Power Systems Analysis, Inc., Plaintiff-Appellant,

v.

City of Bloomer, Defendant-Respondent.

Court of Appeals

*No. 95–0458. Submitted on briefs September 14, 1995.—Decided October 24, 1995.*

(Also reported in 541 N.W.2d 214.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Carol S. Dittmar* and *John D. Leary* of *Garvey, Anderson, Johnson, Gabler & Geraci, S.C.* of Eau Claire.

On behalf of the defendant-respondent, the cause was submitted on the brief of *William G. Thiel* of *Weld, Riley, Prenn & Ricci, S.C.* of Eau Claire.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Power Systems Analysis, Inc. appeals a judgment dismissing its complaint against the City of Bloomer. Power sought damages and injunctive relief preventing the City from awarding a contract to Hooper Construction Corporation, claiming that the City lacked the authority to accept Hooper's late bid for a construction project. Because we conclude that it is within the City's discretionary powers to accept late bids for public construction contracts, we affirm the trial court's dismissal of Power's complaint.

The relevant facts are undisputed. In November 1994, the City circulated a request for bids for the construction of an electric substation and distribution facilities. The notice stated that bids were due December 12, 1994, at 1 p.m. local time. Shortly after 1 p.m. on December 12, the bids were opened. It was determined that Power was the lowest bidder. Then, at 2:30 p.m., the City received a late bid from Hooper that was $80,000 lower than Power's bid.[1] The City subsequently awarded Hooper the contract.

Power filed a complaint against the City seeking declaratory and injunctive relief. The complaint alleged four causes of action: (1) breach of contract; (2) breach of statutory duty to award the contract to the

---

[1] Affidavits were submitted to the trial court to explain the reasons behind Hooper's late bid. The affidavits reveal that Hooper's bid was prepared, placed in a sealed envelope and picked up by a courier service on Friday, December 9, for transport from Madison to Bloomer. The bid was to be delivered to the office of the city clerk no later than noon on Monday, December 12. While en route to Bloomer on December 12, the delivery truck broke down and was delayed until a replacement truck arrived. The courier service contacted the City and advised that the delivery on behalf of Hooper would be late. The delivery was ultimately made at 2:30 p.m.

lowest responsible bidder; (3) no discretion to waive the untimeliness of the late bid; and (4) abuse of discretion for awarding the contract to the late bidder. The trial court considered the parties' briefs, affidavits and oral argument and ultimately ruled that: (1) the City possessed the discretion to waive the untimeliness of the late bid; and (2) no contract was formed when Power was initially informed it was the lowest bidder. Therefore, the trial court denied Power's request for injunctive relief and dismissed Power's entire complaint with prejudice.

Power raises a single issue on appeal: whether the City has discretion to accept a late bid for work contracts after all timely bids have been opened.[2] The issue presented in this appeal concerns the construction of § 62.15, STATS., which is reviewed as a question of law without deference to the trial court. *State v. Pham*, 137 Wis. 2d 31, 33-34, 403 N.W.2d 35, 36 (1987).

Section 62.15, STATS., governs contracts for public construction that exceed $10,000 and provides in relevant part:

> (1) CONTRACTS; HOW LET. All public construction, the estimated cost of which exceeds $10,000, shall be let by contract to the lowest responsible bidder; all other public construction shall be let as the council may direct. . . .
>
> . . . .

---

[2] Power has not appealed other causes of action alleged and dismissed with prejudice along with the rest of the complaint. Therefore, we do not consider these issues. *See Waushara County v. Graf*, 166 Wis. 2d 442, 451, 480 N.W.2d 16, 19 (1992) (it is a well-established rule in Wisconsin that appellate courts need not and ordinarily will not consider or decide issues that are not specifically raised on appeal).

(5)  REJECTION OF BIDS. The power to reject any and all bids shall exist unless expressly waived. The board of public works may reject any and all bids, if, in their opinion, any combination has been entered into to prevent free competition. The council may, if it be of the opinion that any of the bids are fraudulent, collusive, excessive or against the best interests of the city, by resolution adopted by two-thirds of its members, reject any or all of the bids received and order the work done by the city directly under the supervision of the board of public works . . . .

Neither party disputes that under § 62.15(1), STATS., certain contracts shall be let only to the lowest responsible bidder. Additionally, neither party disputes the City's power under § 62.15(5), STATS., to reject any and all bids, unless the power is expressly waived. At issue is whether the City has the discretion to open a late bid after the timely bids have been opened.

Power argues that when the City was presented with the late bid, it had two choices under § 62.15(1) and (5), STATS.: accept the lowest timely bidder (Power), or reject all bidders and reopen the project for bidding. Power argues that because the City did neither, the City's action was "clearly outside the statutory directives" found in § 62.15(1).[3] Additionally, Power offers decisions from numerous other jurisdictions in support of its position that late bids are not capable of acceptance.[4]

---

[3] However, Power acknowledges that no Wisconsin case has addressed a city's authority to accept a late bid.

[4] Power cites *City of Atlanta v. J.A. Jones Constr. Co.*, 392 S.E.2d 564 (Ga. App. 1990), *rev'd*, 398 S.E.2d 369 (Ga. 1990), *vacated on remand*, 402 S.E.2d 554 (Ga. App. 1991); *Rexton, Inc. v. State*, 521 N.W.2d 51 (Minn. App. 1994); *Petri v. Montana State Univ.*, 860 P.2d 154 (Mont. 1993); *George A. Nole & Son,*

Like Power, the City argues that § 62.15, STATS., is clear. However, the City disagrees with what the statute clearly provides. The City states, "[T]he legislature has simply not spoken to the issues of establishing a bid opening time and the acceptability or unacceptability of considering bids submitted thereafter." Therefore, the City argues, because the legislature has failed to speak, courts should be hesitant to engage in micro management of local, municipal affairs.

The purpose of the rules of statutory construction is to give effect to the legislative intent. *Pham*, 137 Wis. 2d at 34, 403 N.W.2d at 36. When determining legislative intent, this court first examines the language of the statute itself and will resort to extrinsic aids only if the language is ambiguous. *Id.*; *In re P.A.K.*, 119 Wis. 2d 871, 878, 350 N.W.2d 677, 681-82 (1984). If a statute is ambiguous, we look to its content, subject matter, scope, history and the object to be accomplished to ascertain its reasonable meaning. *Boltz v. Boltz*, 133 Wis. 2d 278, 284, 395 N.W.2d 605, 607 (Ct. App. 1986). A statute is ambiguous if reasonable persons could disagree as to its meaning, and whether a statute is ambiguous is a question of law. *Id.*; *In re D.S.*, 142 Wis. 2d 129, 134, 416 N.W.2d 292, 294 (1987). Absent any ambiguity, this court gives the language its ordinary meaning. *State ex. rel. Frederick v. McCaughtry*, 173 Wis. 2d 222, 225-26, 496 N.W.2d 177, 179 (Ct. App. 1992).

We begin with our examination of the statute's language. *Pham*, 137 Wis. 2d at 34, 403 N.W.2d at 36.

---

*Inc. v. Board of Educ.*, 514 N.Y.S.2d 274 (N.Y. A.D. 1987); *H.R. Johnson Constr. Co. v. Board of Educ.*, 241 N.E.2d 403 (Ohio Com.Pl. 1968).

We agree with both parties that § 62.15(1), STATS., requires that contracts be awarded to the lowest responsible bidder and that under § 62.15(5), STATS., cities are explicitly authorized to reject bids. Furthermore, we observe that the statute does not address the specific details of the bidding process or a city's power to accept late bids. We agree with the City that this silence signifies not ambiguity but a legislative decision to leave specific aspects of the bidding process to the discretion of each city. Therefore, we conclude that while § 62.15 does not explicitly authorize a city to accept a late bid, a city is not precluded from doing so under the statute. Instead, the decision is within the City's discretionary powers and is subject to judicial review. *See State ex rel. Hron Bros. v. Port Washington*, 265 Wis. 507, 509-10, 62 N.W.2d 1, 2 (1953).[5]

---

[5] In *State ex rel. Hron Bros. v. Port Washington*, 265 Wis. 507, 509-10, 62 N.W.2d 1, 2 (1953), our supreme court, interpreting § 62.15, STATS., stated that when the powers conferred on a municipal body involve the use of discretion, the courts will not question its exercise except for an abuse equivalent to fraud. Furthermore, the court stated: "[W]hen the authority conferred was to let the contract to the lowest *responsible* bidder the courts very properly hold that the power thus conferred implies the exercise of discretion which will not be interfered with by the courts." *Id.* at 510, 62 N.W.2d at 2 (emphasis in original). While these statements suggest a city's exercise of discretion will be upheld absent serious error, a more recent supreme court case indicates that judicial review of bidding decisions is appropriate, although such review is "generally limited to determining whether the bidding authority acted in an arbitrary or unreasonable manner." *Aqua-Tech, Inc. v. Como Lake Protect. & Rehab. Dist.*, 71 Wis. 2d 541, 550-51, 239 N.W.2d 25, 30 (1976).

Power has not pursued on appeal its initial claim that the City, if it had the discretion to accept the late bid, abused its

■

Our conclusion that the City has discretion to accept late bids is consistent with our supreme court's observation that statutes conferring the power to let contracts to the lowest responsible bidder imply the exercise of discretion. *Aqua-Tech, Inc. v. Como Lake Protect. & Rehab. Dist.*, 71 Wis. 2d 541, 549, 239 N.W.2d 25, 29 (1976).[6] Additionally, our conclusion follows our supreme court's directive that statutory bidding provisions be read in light of the reason for

discretion in doing so. Therefore, we need not determine whether the appropriate standard of review of the City's exercise of discretion is whether there was an abuse equivalent to fraud, as suggested by *Hron*, or whether the City acted in an arbitrary or unreasonable manner, as suggested by *Aqua-Tech*. However, we note the apparent inconsistency in these two cases to recognize that this issue may arise in the future.

[6] Because Power has not pursued on appeal its claim that the City abused its discretion, we need not address the circumstances under which a city may reasonably exercise its discretion, if one concluded that is the appropriate standard of review (*see supra* text accompanying note 5). However, we note that one federal court in Wisconsin has examined this issue as it relates to § 66.904(2)(c), STATS., a bidding statute for metropolitan sewerage districts. *Dillingham Constr., Inc. v. Milwaukee Metro. Sewerage Dist.*, 629 F. Supp. 406 (E.D. Wis. 1986). In *Dillingham*, the district court concluded that the district had properly exercised its discretion when it accepted a bid in which the party had failed to fill in the amount of a penalty bond. *Id.* at 410. The court reasoned that acceptance of the bid was appropriate because the party's failure was not material and was quickly cured. *Id.* One could argue that under the reasoning in *Dillingham*, a reviewing court should examine whether a party's noncompliance with bidding rules was material in order to determine whether there was an unreasonable exercise of discretion, not to determine whether a city has the discretion to accept noncomplying bids.

825

their enactment, lest they be applied where they were not intended to operate and thus deny the authorities the ability to deal with problems in a sensible, practical way. *Waste Management, Inc. v. Wisconsin Solid Waste Recycling Auth.*, 84 Wis. 2d 462, 470, 267 N.W.2d 659, 663-64 (1978).

Statutory bidding requirements are designed to prevent fraud, collusion, favoritism and improvidence in the administration of public businesses, as well as to insure that the public receives the best work or supplies at the most reasonable price practicable. *Aqua-Tech*, 71 Wis. 2d at 550, 239 N.W.2d at 30 (citing *Blum v. Hillsboro*, 49 Wis. 2d 667, 671, 183 N.W.2d 47, 49 (1971)). Recognizing the City's discretion to accept late bids will further the City's ability to deal with problems in a sensible, practical way and thereby enable the City to attain the statutory goals of preventing fraud and insuring that the public receives the best work at the most reasonable price.

Power argues that other jurisdictions have determined that late bids are not capable of acceptance. These decisions are, of course, cited only as persuasive authority. We do not find them persuasive. First, cases in other jurisdictions are based on statutes and rules different from those in Wisconsin. For example, in *Rexton, Inc. v. State*, 521 N.W.2d 51 (Minn. App. 1994), the Minnesota Court of Appeals held that where a courier responsible for delivering a bid was delayed due to bad weather conditions and the bid was therefore delivered one minute late, the lateness was a deficiency that could not be waived at the state's discretion. *Id.* at 53-54. The court based its decision in part on a state rule requiring that late bids were to be returned unopened. *Id.* at 53. Power has cited no similar Wisconsin rule

that would indicate that our state has made a policy determination that late bids are unacceptable.

Moreover, our courts have recognized a city's power to exercise discretion in the bidding process and the need to give cities the ability to deal with problems in a sensible, practical way. *See Envirologix Corp. v. Waukesha,* 192 Wis. 2d 277, 291-92, 531 N.W.2d 357, 364 (Ct. App. 1995); *Waste Management,* 84 Wis. 2d at 470, 267 N.W.2d at 663-64. It is not this court's role to impose restrictions on a city's discretion in the bidding process where the legislature has been silent on the issue, as it has been in § 62.15, STATS. If Power believes cities should not have the discretion to accept late bids, it must look to the legislature for relief.

Contrary to the wishes of the concurrence, our analysis of this case must end at this point. We will not address the standard by which a court should review a city's exercise of discretion, or the point at which a city's exercise of discretion should be overturned. These issues were not raised or briefed on appeal and therefore, any discussion on this issue would be nothing more than dicta.

*By the Court.*—Judgment affirmed.

MYSE, J. (*concurring*). The City of Bloomer's ability to ignore its own bidding rules is the basis of this appeal. The issue identified by the majority is whether the City has the power to exercise discretion to accept an untimely bid. The majority without limitation has said that the City does have such power and further speaks in language that implies that the City has the power to disregard any of its bidding rules. My answer to the limited question of whether the City has the power to accept late bids is that it may, but only under

limited circumstances. My answer to the broader question is that the City has the power to ignore its own bidding rules only when the noncompliance with the rule is not material and does not jeopardize the integrity of the bidding process. *See Dillingham Constr., Inc. v. Milwaukee Metro. Sewerage Dist.*, 629 F.Supp. 406 (E.D. Wis. 1986).

In this case the bid was received one and one-half hours late and under circumstances that provide some assurance that the delay in submitting the bid did not provide an opportunity for manipulation or alteration of the bid to the detriment of the other bidders. Under these circumstances, if it can be determined that the tardiness was not material and acceptance will not compromise the integrity of the bidding process, the majority is correct in deciding that the City has the power to exercise discretion to receive the tardy bid. However, there must be a judicial determination of whether these criteria are met in this case. The City does not have the power to ignore the bidding rules it established if these criteria are not met. *See id.*

The majority does not limit the power of the City to exercise its discretion, fails to establish criteria upon which we review the City's exercise of discretion and does not address whether the City properly exercised its discretion in this case. Without such limitations the majority opinion throws open to the City's exercise of discretion all bidding rules. While one readily understands why the City wished to accept a bid $80,000 lower than the timely bids that were submitted, ability to obtain the lowest bid in its future lettings will be substantially compromised if the rules of bidding are not meaningful and enforced so as to create a level playing field for all participating in the bidding process. I fear that the broad language, the lack of

limitation and the lack of a standard to review the City's exercise of discretion all invite mischief that will seriously compromise the legitimacy of the bidding process.