D.M.K., Inc., Plaintiff-Appellant,†

v.

Town of Pittsfield, Defendant-Respondent.

Court of Appeals

*No. 2005AP221. Submitted on briefs December 13, 2005.
—Decided February 28, 2006.*

2006 WI App 40

(Also reported in 711 N.W.2d 672.)

† Petition for review denied 5-9-06.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Michael L. Hermes* of *Metzler and Hager, S.C.* of Green Bay.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Terence J. Bouressa* of *Bouressa & Patteson, S.C.* of Green Bay, and *Jon D. Anderson* of *Law Office of Jon D. Anderson LLC* of Green Bay.

On behalf of Wisconsin Towns Association, an amicus curiae brief was filed by *Richard J. Stadelman* of Shawano.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. D.M.K., Inc. appeals a grant of summary judgment in favor of the Town of Pittsfield. As a disappointed bidder for municipal road construction projects, D.M.K. claims that the Town failed to comply with applicable statutes and that the circuit court incorrectly limited the types of damages available. We affirm the circuit court's grant of summary judgment.

## FACTS

¶ 2. On May 13, 2003, the Pittsfield town board reviewed bids for several road construction projects. Altogether, there were four projects, referred to as Pineview, Robin, Hillside, and Sunnybrook. During the meeting, the board awarded contracts for three of the projects, with the Sunnybrook project being reserved for later.

¶ 3. D.M.K. bid on all the projects and was the lowest bidder for each one. The town chairperson, Dawn Kelm, began discussion of the bids by noting that D.M.K had not been awarded another contract, referred to as White Pine, on an earlier occasion.

¶ 4. Jon Anderson, the Town's attorney, expressed concerns about D.M.K. because of problems with an earlier project. He noted an instance where gravel was left on the road, creating a safety hazard. The sheriff's department asked that the gravel be removed, but the Town was unable to reach D.M.K. The gravel was ultimately removed by a town resident. Also noted was an instance where new asphalt was damaged while shouldering on a hot day shortly after being paved. Kelm referred to the inexperience of several D.M.K.

workers, who often worked without supervision. On one occasion, Kelm stopped work on a project because an inexperienced worker was not being supervised.

¶ 5. Dean Freeburg, an engineer for Mead & Hunt, was hired by the Town and stated that his firm had to correct issues regarding the grading/undercutting of a road and that erosion control problems had caused the Department of Natural Resources to become involved. Freeburg noted that there was no line of communication with D.M.K and that concerns expressed were not met with timely responses.

¶ 6. Town supervisor Tom Huetter stated that D.M.K did not have the Town's confidence, and the Town was spending more money by taking the lowest bidder. Kelm added that D.M.K. had failed to grade roads until days after being requested to do so, and it failed to put up road closure signs until well into a project.

¶ 7. After Huetter reiterated the Town's lack of confidence in D.M.K., Kelm stated her concern with past conduct, but thought D.M.K. may be capable of conducting one or two contracts. She stated the Town would like to work with D.M.K. to rebuild confidence. Anderson questioned D.M.K.'s ability to take only one or two contracts because of an earlier comment by D.M.K.'s owner, Craig Duchateau, who stated that D.M.K.'s bids were only good if awarded all four contracts because of machine mobilization costs. When Huetter asked D.M.K. about the mobilization costs, Michael Hermes, D.M.K's attorney, stated that D.M.K. might fare better by getting no contracts and suing the Town. Anderson then suggested that if D.M.K. were awarded only two contracts, it should be required to sign a waiver, relinquishing any right to sue the Town for the other contracts.

¶ 8. After a recess, Hermes stated that if D.M.K. received no contracts, it would sue the Town. Ducha-

teau stated that if D.M.K were awarded three jobs, it would sign a waiver. The Town then carried a motion to award two contracts to D.M.K., conditioned upon D.M.K. signing a waiver. Hermes responded that D.M.K. would not accept the award with the condition unless three contracts were awarded. The Town then rescinded its motion to award two contracts with the waiver condition and decided to award no contracts to D.M.K. because "they do not have the capacity and competence" to comply with the terms of the contract, and the Town no longer had trust in D.M.K. The contracts were then awarded to other bidders.

¶ 9. D.M.K. then filed a notice of claim under WIS. STAT. § 893.80, seeking approximately $216,000 as damages for lost profits. These damages were based not only on the four projects discussed at the May 13 meeting, but also the White Pine project awarded on March 31. After the Town disallowed the claim, this action was brought in the circuit court. The Town filed a motion for summary judgment, asserting that D.M.K. had no right to seek lost profits as damages and that the Town was acting within its discretion at the board meeting.

¶ 10. The court granted the Town's motion for summary judgment. While concluding that the Town's actions at the hearing "violated the smell test," the court determined that the Town's action of placing a condition on its award was a discretionary act within its power. The court also concluded that D.M.K. could not bring a suit for lost profits. D.M.K. appeals.

## STANDARD OF REVIEW

¶ 11. In reviewing a grant of summary judgment, we apply the standards set forth in WIS. STAT.

§ 802.08(2)[1] in the same manner as the circuit court. *Badger State Bank v. Taylor*, 2004 WI 128, ¶ 12, 276 Wis. 2d 312, 688 N.W.2d 439. That statute permits summary judgment where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). Here, both parties agree there are no genuine issues of material fact.

## DISCUSSION

*The Town's Actions at the May 13 Meeting*

██

¶ 12. The Town, as a municipality, enjoys governmental immunity under WIS. STAT. § 893.80. The relevant portion of that statute reads:

> No suit may be brought against any [governmental entity] . . . or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such [governmental entity] . . . or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

WIS. STAT. § 893.80(4). The terms "legislative, quasi-legislative, judicial or quasi-judicial" are synonymous with the term "discretionary." *Envirologix Corp. v. City of Waukesha*, 192 Wis. 2d 277, 288, 531 N.W.2d 357 (Ct. App. 1995). Thus, the statute affords immunity for discretionary acts, as opposed to ministerial acts, for which there is no immunity. *Id.* at 288–89. A ministerial act is one that is absolute and imperative, involving the

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

performance of a specific task that is imposed by law with such certainty that nothing remains for judgment or discretion. *Id.* at 289.

■

¶ 13. The statute under which the Town let the disputed contracts is WIS. STAT. § 60.47, which states "[t]he town board shall let a public contract for which advertising is required under (2)(b) to the lowest responsible bidder." WIS. STAT. § 60.47(3). Determination of the lowest responsible bidder implies the exercise of discretion. *Aqua-Tech v. Como Lake Protect. & Rehab. Dist.*, 71 Wis. 2d 541, 549, 239 N.W.2d 25 (1976). A "responsible bidder" is "a person who, in the judgment of the town board, is financially responsible and has the capacity and competence to faithfully and responsibly comply with the terms of the public contract." WIS. STAT. § 60.47(1)(b).

■

¶ 14. A reviewing court will only interfere with a bidding authority's discretionary act if it is arbitrary or unreasonable. *Glacier State Distrib. Servs., Inc. v. DOT*, 221 Wis. 2d 359, 368, 585 N.W.2d 652 (Ct. App. 1998). An arbitrary action is one that is either so unreasonable as to be without rational basis or is the result of an unconsidered, willful, or irrational choice of conduct. *Id.* at 369–70. An unreasonable action is one that lacks a rational basis. *Id.* at 370.

¶ 15. D.M.K.'s arguments center around the Town's actions at the May 13 meeting. It asserts that when the Town made a conditional award of two contracts, it implicitly found D.M.K. to be a responsible bidder. With that implicit finding, D.M.K. argues that the Town had a ministerial duty to award D.M.K. the contracts. D.M.K. further argues that the waiver condition was invalid and was not within the Town's discretion to impose.

¶ 16. The Town argues that it found D.M.K. not to be a responsible bidder. The Wisconsin Towns Association, as amicus curiae, also disputes D.M.K.'s assertion that the Town had a ministerial duty to award the contracts after determining responsibility. It suggests that the word "shall" in WIS. STAT. § 60.47(3) implies some degree of discretion beyond determining whether a bidder is responsible. It therefore implies that the Town had discretion to require D.M.K. to sign a waiver as a condition of receiving any contracts.

■

¶ 17. We first reject the argument that WIS. STAT. § 60.47(3) implies a broad range of discretion beyond determining whether a bidder is responsible. Section 60.47(3) states that the Town "shall let a public contract . . . to the lowest responsible bidder." On its face, the statute only imparts the Town with one discretionary determination when determining who should be awarded a contract—whether a given bidder is responsible. *See* WIS. STAT. §§ 60.47(3) and (1)(b).

¶ 18. Relying on *Envirologix*, the Association asserts that the word "shall" itself in WIS. STAT. § 60.47(3) implies the exercise of discretion. However, the Association misinterprets our decision in *Envirologix*. In that case, we were attempting to harmonize an administrative rule, which did not contemplate any discretion, with a statute that included the discretionary determination of whether a bidder is responsible. *Id.* at 292. Because the administrative rule could not stand at odds with an unambiguous statute, we held that the word "shall" *in the administrative rule* implied the exercise of discretion. *Id.* Therefore, our decision in *Envirologix* in no way degrades the meaning of the word "shall" in bidding *statutes*. In *Aqua-Tech*, 71 Wis. 2d at 550, our supreme court noted that "[s]tatutory

bidding requirements are designed to prevent fraud, collusion, favoritism and improvidence in the administration of public business, as well as to insure that the public receives the best work or supplies at the most reasonable price practicable." Interpreting bidding statutes to imply the open-ended discretion suggested by the Association would facilitate the precise problems that competitive bidding statutes are designed to prevent.[2]

¶ 19. Nevertheless, we uphold the Town's ultimate finding that D.M.K. was not a responsible bidder.[3] This finding is supported by numerous legitimate concerns about D.M.K.'s performance of prior contracts. Therefore, we cannot conclude that the finding was without a rational basis, nor can we conclude that it was the result of an unconsidered, willful, or irrational choice of conduct. As such, the finding was not arbitrary or unreasonable.

¶ 20. Further, we decline D.M.K.'s invitation to discern an alternative finding from the Town's conduct preceding its ultimate finding on responsibility. D.M.K.

---

[2] Defending the notion that it has broad discretionary powers, the Town cites our decision in *Power Sys. Analysis, Inc. v. City of Bloomer*, 197 Wis. 2d 817, 541 N.W.2d 214 (Ct. App. 1995), where we held that a municipality had discretion to accept a late bid. *Id.* at 824. Our decision in that case was premised upon the relevant statutes' silence on the issue. *Id.* Here, by contrast, there is a specific statute stating to whom a contract must be awarded. *See* WIS. STAT. § 60.47(3).

[3] We need not address whether the contracts or the waiver condition would have been valid if D.M.K. had accepted them. However, we note that a basic premise of competitive bidding is that all the bidders should be bidding on the same contract, presumably with the same specifications and conditions. *See* 64 C.J.S., *Municipal Corporations* § 920 (1999).

contends that the Town implicitly found it to be a responsible bidder when it offered two contracts with the waiver condition. Under the circumstances, we disagree.

¶ 21. When looking at the chronology of events at the Town meeting, as the Town was evaluating whether D.M.K. was capable of performing one or two contracts, D.M.K. threatened to sue the Town. At that point, the process of determining responsibility seemingly derailed, at least temporarily. The Town offered two contracts if D.M.K. would sign a waiver. D.M.K. countered that it would sign a waiver if awarded three contracts. The parties had essentially entered negotiations.[4] When negotiations broke down, the Town found D.M.K. not to be a responsible bidder and awarded D.M.K. no contracts. Given the context of the conditional award, we cannot determine that the Town implicitly found D.M.K. to be a responsible bidder because it is just as plausible that the Town was simply negotiating with D.M.K. in an attempt to avoid litigation. These negotiations appear to have occurred outside the framework of the bidding statutes and therefore are a poor resource for deriving any implied finding of responsibility, especially where the Town made an explicit finding to the contrary.

---

[4] We note that WIS. STAT. § 66.0901(2) permits a municipality to require bidders to submit a sworn statement related to financial responsibility. While the Town declined to require such a statement here, we note that WIS. STAT. § 66.0901(2) also requires such statements to be given to the municipality at least five days before the bids are opened. This requirement could be read to imply that determinations of bidders' responsibility should also occur before the bids are opened. Had that happened here, the Town might not have been lured into negotiations by D.M.K.'s threat of litigation.

¶ 22. We next address the damages issue, which is intertwined with a dispositive procedural issue. Relying on our supreme court's decision in *Aqua-Tech*, the Town argues that D.M.K. is not entitled to maintain a suit for damages, but was instead required to seek an injunction. Only if D.M.K. successfully obtained an injunction, argues the Town, would it be entitled to limited damages, not including lost profits.

¶ 23. D.M.K. attempts to distinguish the facts in *Aqua-Tech* from those here, asserting that the remedies discussed in *Aqua-Tech* only reflect the remedies sought in that case, not the full spectrum of remedies available. D.M.K. also argues that the language regarding available damages is dicta, and that it merely reflects the common-sense notion that one cannot obtain both an injunction and lost profits because that could result in a double recovery.

¶ 24. In *Aqua-Tech*, the circuit court denied Aqua-Tech's application for a temporary injunction in a bidding dispute. *Aqua-Tech*, 71 Wis. 2d at 548. After determining that the circuit court was incorrect in doing so, our supreme court addressed Aqua-Tech's standing and the available remedies. *Id.* at 548–54. The court rejected mandamus as an available remedy, but concluded that Aqua-Tech could seek to enjoin the district from awarding the project to another bidder. *Id.* at 552. If Aqua-Tech prevailed in its pursuit of an injunction, it could recover as damages "its reasonable and necessary expenditures in preparing its bid, plus costs of obtaining the bonds required by the specifications, but not its loss of profits." *Id.* at 553–54.

¶ 25. We first reject D.M.K.'s assertion that the language regarding a disappointed bidder's available remedies in *Aqua-Tech* is dicta. In *Glacier State*, we concluded that other language in *Aqua-Tech* was not dicta, even though it was not central to the court's decision.[5] *Glacier State*, 221 Wis. 2d at 367. In support of this conclusion, we cited *State v. Kruse*, 101 Wis. 2d 387, 392, 305 N.W.2d 85 (1981), for the proposition that when the supreme court intentionally takes up, addresses, and decides an issue germane to, though not necessarily dispositive of, the controversy before it, such a decision is not dicta but is a judicial act that will thereafter be recognized as binding precedent. We likewise conclude that the *Aqua-Tech* court's decision regarding a disappointed bidder's available remedies is not dicta.

¶ 26. We also reject D.M.K.'s argument that the court's conclusions in *Aqua-Tech* regarding an injunction as a remedy, along with the unavailability of lost profits as damages, merely reflect the relief sought in that case. Instead, the decision reflects a consideration of the public policy rationale underlying the competitive bidding statutes. As noted in *Aqua-Tech*, the competitive bidding statutes are designed primarily for the benefit and protection of the public, not individual bidders. *Aqua-Tech*, 71 Wis. 2d at 552. By not seeking an injunction, D.M.K. has allowed the disputed projects

[5] In *Glacier State Distrib. Servs., Inc. v. DOT*, 221 Wis. 2d 359, 367, 585 N.W.2d 652 (Ct. App. 1998), we concluded that the court in *Aqua-Tech v. Como Lake Protect. & Rehab. Dist.*, 71 Wis. 2d 541, 239 N.W.2d 25 (1976), overruled the "abuse amounting to fraud" standard for reviewing a municipality's exercise of discretion and replaced it with the "arbitrary or unreasonable" standard applied earlier in this opinion.

to go forward with other contractors and sought to recover its purported losses with a lawsuit seeking damages. If D.M.K. were successful in that scenario, the Town and its taxpayers would pay D.M.K.'s $216,000 in lost profits *in addition* to the contract price paid to the contractor who performed the work. On its face, this result fails to benefit or protect the public.

¶ 27. Instead, D.M.K. should have sought to enjoin the Town from awarding, or the successful bidder from performing, the disputed contracts.[6] If successful, D.M.K. could force the Town to award it the contracts, or alternatively, to relet them. *Id.* at 552. D.M.K. could also recover its costs of preparing the first bid and obtaining the required bond. *Id.* at 553–54. However, because D.M.K. would have an opportunity to recoup its otherwise lost profits by either being awarded the contracts or by rebidding on them, it would not be entitled to lost profits as damages. *See id.* at 552, 553–54. D.M.K.'s interest in obtaining the benefit of the contracts would be protected, while the public would be protected insofar as it would only have to compensate one bidder for a given contract—the bidder that actually performed the contract.

*By the Court.*—Judgment affirmed.

---

[6] As noted in *Aqua-Tech*, injunctive relief should be sought immediately to avoid the "complicating factor" of having the contract awarded to another party. *See Aqua-Tech*, 71 Wis. 2d at 552. Where that is not possible, as D.M.K. might argue here, an injunction may still be permissible before performance of the contract begins. However, once performance begins and resources are expended, the public policy benefits of injunctive relief quickly dissipate.