**UNITED STATES of America, Appellee,**

v.

**George BOYLAN, Appellant.**

**No. 785, Docket 79–1430.**

United States Court of Appeals,
Second Circuit.

Argued March 18, 1980.
Decided April 29, 1980.

Anthony F. Correri, Mineola, N. Y. (James R. Moffatt, Mineola, N. Y., on the brief), for appellant.

Lothar R. Genge, Sp. Asst. U. S. Atty. (Edward R. Korman, U. S. Atty., Thomas Puccio, Miles M. Tepper, Joel Cohen, Asst. U. S. Attys., Brooklyn, N. Y., on the brief), for appellee.

Before MULLIGAN and OAKES, Circuit Judges, and POLLACK, District Judge.[*]

POLLACK, District Judge.

Appellant George Boylan, the business manager of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, Local 5, AFL–CIO, was tried before Judge George C. Pratt and a jury in the Eastern District of New York on two consolidated indictments. He now appeals his conviction on 11 of the 12 counts charged therein: one count of conducting the affairs of a union local through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c)[1] (the RICO count); one count of receiving illegal payments in violation of 29 U.S.C. § 186(b)(1)[2] (the illegal payments count); five counts of income tax evasion in violation of 26 U.S.C. § 7201; and four counts of filing false tax returns in violation of 26 U.S.C. § 7206(1). He was sentenced to terms of imprisonment of 10 years on the RICO count, one year on the illegal payments count, five years on each of the tax evasion counts, and three years on each of the false filing counts, all to run concurrently. In addition, he was fined a total of $85,000: $25,000 on the RICO count, and $10,000 on the illegal payments count and on each evasion count.

On appeal, Boylan argues that the RICO count and the illegal payments count are multiplicitous, and that the sentences imposed constitute multiple punishment.[3] Ap-

---

[*] Honorable Milton Pollack, United States District Judge for the Southern District of New York, sitting by designation.

1. 18 U.S.C. § 1962(c) reads:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

2. § 186(b)(1) reads:

(b)(1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a) of this section.

§ 186(a) reads:

(a) It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

(1) to any representative of any of his employees who are employed in an industry affecting commerce; or

(2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; or

(3) to any employee or group or committee of employees of such employer employed in an industry affecting commerce in excess of their normal compensation for the purpose of causing such employee or group or committee directly or indirectly to influence any other employees in the exercise of the right to organize and bargain collectively through representatives of their own choosing; or

(4) to any officer or employee of a labor organization engaged in an industry affecting commerce with intent to influence him in respect to any of his actions, decisions, or duties as a representative of employees or as such officer or employee of such labor organization.

The payments charged in Count Two are violations of § 186(a)(4).

3. Since the one year's imprisonment imposed on the illegal payments count will run concurrently with the ten years imposed on the RICO count, the practical result for which Boylan is contending is that his $85,000 fine should be reduced by $10,000, the amount imposed on the illegal payments count.

pellant's argument is unpersuasive on both statutory and constitutional grounds, and requires no recital of the overwhelming evidence produced at trial of the large scale payments Boylan received from construction companies that employed members of Local 5 to work on electrical power plants.

This Circuit has recently held that separate judgments of conviction may not be entered for bank robbery under 18 U.S.C. § 2113(a) and armed bank robbery under 18 U.S.C. § 2113(d), when the convictions arise out of a single criminal transaction. We also held that the government may not prosecute a defendant under both 18 U.S.C. § 924(c)(1) (use of a firearm to commit a felony) and 18 U.S.C. § 2113(d) (armed bank robbery). *Grimes v. United States*, 607 F.2d 6 (2d Cir. 1979). The rationale underlying these holdings is that a single transaction should not be turned into multiple offenses absent clear evidence of congressional intent to create separate crimes.

■ In the case at hand, however, Congress clearly defined separate crimes. The purpose of RICO was to establish "new penal prohibitions, and . . . enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." Organized Crime Control Act of 1970, Statement of Findings and Purpose, 84 Stat. 922, *reprinted in* [1970] U.S.Code Cong. & Admin.News, p. 1073. As the Ninth Circuit has written in *United States v. Rone*, 598 F.2d 564, 571 (9th Cir. 1979):

> There is nothing in the RICO statutory scheme which would suggest that Congress intended to preclude separate convictions or consecutive sentences for a RICO offense and the underlying or predicate crimes which make up the racketeering pattern. The racketeering statutes were designed primarily as an additional tool for the prevention of racketeering activity, which consists in part of the commission of a number of crimes. The Government is not required to make an election between seeking a conviction under RICO, or prosecuting the predicate offenses only. Such a requirement would

nullify the intent and effect of the RICO prohibitions.

■ Nor does such a plan violate the double jeopardy test set out in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), where the Supreme Court held that "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." The two statutes involved in the present case do not proscribe the same act or transaction, and they implement different congressional purposes. One proscribes the receipt of illegal payments by union officials and stems from congressional concern with the integrity of labor organizations. The other proscribes a "pattern" of illegal activities, and arises from congressional concern over the influence of organized crime. It is clear that in the case before us, Congress intended to create separate crimes, separately punishable. *See Whalen v. United States*, —— U.S. ——, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).

Accordingly, there is no multiplicity in convicting and sentencing Boylan separately on the RICO and the illegal payment counts.

■ Appellant's other arguments are similarly unpersuasive. He cannot attack the judge's charge to the jury for omitting instructions that the payments must have been taken willfully and in exchange for labor peace. The question of intent was never in issue at the trial. Boylan's entire defense was a denial of ever having received any payments at all. Not only did Boylan not object below to these "omissions", but he actually requested that the judge not include them. He cannot now attack the jury charge for omitting the very instructions he successfully excluded.

■ Furthermore, Boylan was not injured by the charge as delivered. The RICO count does not include a scienter element over and above that required by the

predicate crimes, in this case the violations of 29 U.S.C. § 186(b)(1). Section 186(b)(1) prohibits the receipt of payments proscribed in § 186(a). Section 186(a)(4) prohibits payments made with intent to influence a labor representative concerning union activities. The indictment herein charged the taker, not the maker of the payment. Section 186(a)(4) is posited on the intent of the maker of the payment. Consequently in imposing an intent element on the defendant, a taker, the charge became more favorable to defendant than required by *United States v. Ricciardi*, 357 F.2d 91, 99 (2d Cir. 1966).

Finally Boylan argues that Judge Pratt erred in denying him an evidentiary hearing on whether his tax returns and the bank records from certain sham corporations used to channel the illegal payments were obtained by means of improper cooperation between the Internal Revenue Service and the Department of Justice in violation of the good faith requirement of *United States v. LaSalle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). The IRS investigation was first directed against the employers and uncovered payments by them to dummy corporations. The prosecuting attorney's detailed affidavit showed that the proper authorizations to obtain the tax returns were followed, namely, authorization from the Attorney General to seek a Court order and obtaining such an order pursuant to 26 U.S.C. § 6103(i)(1). The conclusory affidavit of Boylan's trial attorney that "it must be assumed that there was inter-agency cooperation" is hardly a basis for a hearing under *LaSalle, cit. supra.* There is no evidence in this record on which to question the ruling below.

The judgments of conviction are in all respects affirmed.