(91-CF-282) STATE of Wisconsin, Plaintiff-Respondent,

v.

Mark W. MUELLER, Defendant-Appellant.†

(91-CF-283) STATE of Wisconsin, Plaintiff-Respondent,

v.

James I. STOPPLE, Defendant-Appellant.†

Court of Appeals

*Nos. 93–3227–CR, 93–3228–CR,. Submitted on briefs October 6, 1994.—Decided March 28, 1996.*

(Also reported in 549 N.W.2d 455.)

†Petition to review denied.

For the defendants-appellants the cause was submitted on the brief of *James Geis* of *James Geis Law*

*Office* of Chicago, IL; *Stephen H. Hurley* of *Hurley, Burish & Milliken*, Madison; *John W. Markson* of *Bell, Metzner, Gierhart & Moore* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, with *Roy Korte*, assistant attorney general.

Before Gartzke, P.J., Dykman and Sundby, JJ.

GARTZKE, P.J.   Defendants Mark W. Mueller and James I. Stopple appeal from judgments of conviction against them under the Wisconsin Organized Crime Control Act (WOCCA), §§ 946.80 to 946.88, STATS. Each defendant was convicted on one count of pattern racketeering activity, §§ 946.83(3) and 946.82(2), STATS., for eighteen predicate violations of securities fraud under § 551.41(2) and (3), STATS.

The issues are: (1) whether the statute of limitations bars this prosecution because warrants for defendants' arrests were signed but never executed, the information was not timely filed and the defendants appeared voluntarily at the initial appearance; (2) whether to prove defendants "wilfully" violated state securities laws, the State must establish that they acted with intent to defraud or knowingly violated the securities law; (3) whether WOCCA requires knowledge or intent beyond that required for the predicate offenses that constitute racketeering activity; and (4) whether the jury could find from the evidence that the notes the defendants issued on behalf of their corporation were securities and that the defendants replaced corporate assets with less valuable assets.

We decide all issues against the defendants and therefore affirm the judgments of conviction.

125

## I.

## BACKGROUND

In 1979 the defendants formed Diversified Agricultural Services (DAS), a Wisconsin corporation. DAS purchased three subsidiaries from Keefe & Associates ("Keefe") for $1.8 million. FLS, a farm auction business, was one such subsidiary. Keefe had owed FLS $3.6 million. FLS forgave $1 million of the debt as part of its acquisition by DAS, and Keefe transferred to FLS $2.6 million in accounts receivable at their book value. FLS then transferred those receivables to DAS, and FLS then showed in its books the $2.6 million balance due it from DAS. By 1985 DAS owed FLS $1.5 million on the debt. In 1985 the defendants transferred DAS receivables to FLS in exchange for cancellation of the DAS debt to FLS.

By some time in 1981, defendants had acquired a majority interest in DAS. Mueller was the president and Stopple the vice-president of both DAS and FLS, and they were directors of both companies. While they were not involved in the day-to-day operation of the business of FLS, they were directly involved in its overall operation and controlled its finances.

FLS offered its farm-auction customers an opportunity to defer their income tax on gains realized from the sale of their properties. To accomplish tax deferment, customers sold their farm properties to FLS, taking part of the sale price in cash and the balance in FLS's unsecured installment notes. FLS marketed these notes to its farm auction customers as investments and offered higher interest rates than those available at local banks. Beginning in 1983, FLS offered investors the option of buying either unsecured notes or bank-guaranteed notes. Investors usually took

126

unguaranteed notes. Those notes paid more interest than the bank-guaranteed notes.

In 1985 FLS wrote to its auction customers who held its installment notes, offering to renew its notes as "an opportunity to invest in our company." It offered commissions to employees who "generated" its non-guaranteed installment notes.

FLS operated at a loss in 1982 through 1985. The State presented evidence that between 1981 and 1985 FLS issued or renewed forty-six of its installment sales notes and paid off twenty-one notes. In January 1986 FLS filed bankruptcy, and could not pay $1.5 million on its unsecured notes.

The State subsequently charged each defendant with one count of racketeering under WOCCA, alleging that they had engaged in eighteen predicate acts of securities fraud in violation of § 551.41(2) and (3), STATS. The State alleged that in seventeen instances defendants failed to state material facts relating to FLS's ability to pay its unsecured notes. For an eighteenth predicate act, the State alleged that defendants violated Wisconsin securities laws by transferring worthless accounts receivable to FLS in exchange for forgiveness of DAS's debt to FLS just eight months before FLS went bankrupt.

Nine farmers testified that through May 1985 they had acquired, in total, seventeen unsecured notes from FLS in exchange for the sale of their farm properties. Defendant Mueller acknowledged that he had not told or directed FLS employees to disclose to customers that FLS was highly leveraged, that it had operated at a loss every year since 1981, that the notes were risky investments, that FLS had delinquent accounts receivable, that its net worth depended on its good will, and

that certain long-standing FLS employees had resigned as directors in January 1985.

The jury heard testimony that in 1985 DAS transferred worthless receivables to FLS in exchange for cancellation of the DAS debt of about $1.5 million to FLS.

## II.

### STATUTE OF LIMITATIONS

Section 939.74(1), STATS., provides in material part:

> [P]rosecution for a felony must be commenced within 6 years. . . . Within the meaning of this section, a prosecution has commenced when a warrant or summons is issued, an indictment is found, or an information is filed.

The defendants' WOCCA violations terminated on May 27, 1985. Defendants contend that the State did not timely commence the felony prosecutions against them. They assert that this prosecution was not commenced within six years and no warrant issued and the information was not filed within the six-year limitation. We conclude that the felony prosecutions were commenced on February 26, 1991, and therefore the actions were brought within six years.

Because the facts are undisputed, the proper application of § 939.74(1), STATS., is an issue of law which we decide without deference to the trial court's opinion. *State v. Pham*, 137 Wis. 2d 31, 33-34, 403 N.W.2d 35, 36 (1987).

On February 26, 1991, the same day the State filed the criminal complaints with the clerk of court, the

circuit court judge signed warrants for defendants' arrests and the prosecutor received the warrants. The court found that the warrants were never delivered to law enforcement to be served and instead were placed in the prosecutor's files. The warrants were never filed because, the court found, the defendants' counsel arranged for them to appear voluntarily for an initial appearance on February 26, 1991. The State filed the informations on June 12, 1991.

*State v. Lemay*, 155 Wis. 2d 202, 455 N.W.2d 233 (1990), controls the statute of limitations issue. In *Lemay* the defendant claimed that the State had violated his right to a speedy trial because of a delay between issuance of the complaint and the warrant for his arrest, on the one hand, and execution of the warrant, on the other. *Id.* at 204, 455 N.W.2d at 233. The *Lemay* court held that defendant's right to a speedy trial attached on the day the complaint was filed and the warrant "issued." *Id.* at 210, 455 N.W.2d at 236. On the same day the judge signed the arrest warrant, the district attorney received and sent the warrant to the clerk of court rather than to the sheriff. *Id.* at 205, 455 N.W.2d at 234. As a result, the warrant was not served until thirty-seven months later, but the *Lemay* court concluded that the warrant issued the day that the judge signed it and the district attorney received it. *Id.* at 205, 210, 455 N.W.2d at 234, 236.

*Lemay* means that an arrest warrant issues when it is signed by a judge with intent that it be executed and the warrant leaves the possession of the judge. That happened here on February 26, 1991. The only reasonable inference is that because the warrants were put in the hands of the prosecutor on that day, the trial court had signed the warrants with intent that they be

129

executed. That the prosecutor sat on the warrants is irrelevant. The court issues a warrant, not the prosecutor. That the warrants command "any law enforcement officer" to execute them and no law enforcement officer did so is irrelevant to the question when the warrants issued.[1]

Defendants contend that because they voluntarily appeared, the warrants should never have issued and therefore issuance of the warrants did not commence the felony prosecutions under § 939.74(1), STATS. Defendants base their argument on § 968.04(1)(a), STATS., which provides in relevant part: "When an accused . . . appears voluntarily before a judge, no warrant shall be issued and the complaint shall be filed forthwith with a judge." We reject the defendants' argument. The record does not show that the warrants issued after the defendants had voluntarily appeared. The fact is the warrants had issued, and that commenced the prosecution under § 939.74(1).

### III.

### WILFULNESS ELEMENT IN A SECURITY FRAUD PROSECUTION UNDER § 551.41(2) AND (3), STATS., DOES NOT REQUIRE PROOF THAT DEFENDANT ACTED WITH INTENT TO

---

[1] Cases from other jurisdictions are consistent with our view. *See Nave v. Bell*, 180 F.2d 198, 199 (6th Cir. 1950) (holding that an arrest warrant had issued when it was signed and mailed, even though it was not delivered to the officer who was to execute it until after the limitation period had expired). *See also People v. Hentkowski*, 397 N.W.2d 255, 258 (Mich. Ct. App. 1986) (magistrate issues warrant when he signs an appropriate document and turns it over to the proper person).

## DEFRAUD OR KNOWLEDGE THAT THE LAW WAS VIOLATED

The eighteen predicate acts for the WOCCA charge are securities fraud charges against defendants for violations of § 551.41(2) and (3), STATS. Chapter 551, STATS., is the Wisconsin Uniform Securities Law.

Section 551.41, STATS., provides:

> It is unlawful for any person, in connection with the offer, sale or purchase of any security in this state, directly or indirectly:
>
> (1) To employ any device, scheme or artifice to defraud;
>
> (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
>
> (3) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

Section 551.58(1), STATS., the penalties provision in ch. 551, STATS., makes a violation of § 551.41, STATS., a crime. Section 551.58(1) provides:

> Any person who wilfully violates any provision of this chapter except s. 551.54, or any rule under this chapter, or any order of which the person has notice, or who violates s. 551.54 knowing or having reasonable cause to believe that the statement made was false or misleading in any material respect, may be fined not more than $5,000 or imprisoned not more than 5 years or both. Each of the acts specified shall constitute a separate offense and a prosecution or

conviction for any one of such offenses shall not bar prosecution or conviction for any other offense.

The trial court instructed the jury in part:

Wilful . . . means only that the defendant knowingly committed the act charged. Wilful does not mean that the defendant had an intent to defraud or that the defendant had knowledge that the law was being violated.

The defendants assert that the instruction was error. They assert that because § 551.58, STATS., provides that "wilful" violations of the securities law are crimes, the penalties statute does not apply unless the accused had intent to defraud, was aware of the facts giving rise to a duty to disclose financial information and was aware of the legal duty requiring disclosure. We disagree.

Whether the defendants correctly read § 551.58, STATS., turns on its proper construction. That is a question of law which we decide independently of the trial court's opinion. *Ball v. District No. 4, Area Bd.*, 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984). Because reasonable persons could disagree whether intent or knowledge is an element of § 551.58, we conclude the statute is ambiguous. *Kollasch v. Adamany*, 104 Wis. 2d 552, 561, 313 N.W.2d 47, 51-52 (1981). Whether intent or knowledge is an element depends on the legislature's intent. We ascertain that intent by examining the statute's history, context, subject matter, scope and purpose. *Village of Shorewood v. Steinberg*, 174 Wis. 2d 191, 202, 496 N.W.2d 57, 61 (1993).

We turn first to the context of § 551.58, STATS. The context includes § 541.41, STATS., because it is, among others, the statute whose "wilful" violation is critical

under § 551.58. Nowhere in § 551.41 is there an express requirement that a defendant intend to make an untrue statement or intend to omit a material statement, or intend to violate the statute.

The statutory context of § 551.58(1), STATS., includes express reference to § 551.54, STATS. The latter makes it unlawful to make a statement in a document filed with the commissioner of securities which is false or misleading or to omit to state a material fact necessary in order to make the statements made not misleading. Section 551.58(1) adds to the misleading filing offense the element of "knowing or having reasonable cause to believe that the statement made was false or misleading." Sections 551.54 and 551.58 are counterparts to §§ 404 and 409 of the Uniform Securities Act. Professors Loss and Seligman comment as follows on these sections of the Uniform Act:

> Section 409 [our § 551.58] distinguishes a willful violation of 404 [our § 551.54] from a willful violation of any other section. To violate § 404, which proscribes misleading filings, a person must not only act willfully but also know a statement made to a state securities administrator "to be false or misleading in any material respect. . . ." Elsewhere in the Official Commentary to the 1956 Act, the term *willful* is defined to require "proof that the person acted intentionally in the sense that he was aware of what he was doing." Official Comment to § 204(a)(2)(B).

1 LOSS AND SELIGMAN, SECURITIES REGULATION 64 n.84 (3rd ed. 1989).

We next turn to the purpose of the statute. Chapter 551, STATS., is the Wisconsin Uniform Securities Law. Section 551.67, STATS., directs us to construe ch.

551 "to effectuate its general purpose to make uniform the law of those states which enact the 'Uniform Securities Act' . . . ."

The other states which have enacted the Uniform Securities Act have held that in a criminal securities fraud case, intent to deceive or defraud or to violate the law, or knowledge that the law is being violated, is not an element of the securities fraud offense.[2] *Bayhi v. State*, 629 So. 2d 782, 791 (Ala. Crim. App. 1993); *Clarkson v. State*, 486 N.E.2d 501, 507 (Ind. 1985); *People v. Mitchell*, 437 N.W.2d 304, 306-08 (Mich. Ct. App. 1989); *State v. Fries*, 337 N.W.2d 398, 405 (Neb. 1983); *State v. Russell*, 291 A.2d 583, 588 (N.J. Super. Ct. App. Div., 1972); *State v. Cox*, 566 P.2d 935, 939 (Wash. Ct. App. 1977). Bad motive or knowledge that the law was violated has also been held not to be an element of offenses for failure of a broker-dealer to register or for selling unregistered securities under the Uniform Securities Act, Part II and III (subchs. III & II, ch. 551, STATS.). *State v. Dumke*, 901 S.W.2d 100, 102 (Mo. Ct. App. 1995); *State v. Freis*, 337 N.W.2d 398, 405 (Neb. 1983); and *State v. Sheets*, 610 P.2d 760, 770 (N.M. Ct. App. 1980).[3]

---

[2] The dissent does not refer to the opinions in other states which have enacted the Uniform Securities Act or to our statutory duty to construe ch. 551, STATS., to effectuate its general purpose to make uniform the law of those states which enact the Uniform Securities Act.

[3] The Alaska Supreme Court held in a sale of unregistered securities case under the Uniform Act, *Hentzner v. State*, 613 P.2d 821, 826 (Alaska 1980), that the crime is "malum prohibitum, not malum in se," and therefore "criminal intent in the sense of consciousness of wrongdoing should be regarded as a separate element of the offense . . . ." The Missouri Court of Appeals referred to *Hentzner* as "an aberration; the overwhelm-

Finally, we consider the legislature's inaction in the face of a pertinent decision by the court of appeals. The absence of any reference to intent in § 551.41, STATS., led us to conclude in *State v. Temby*, 108 Wis. 2d 521, 528, 531, 322 N.W.2d 522, 526, 527 (Ct. App. 1982), that intent to defraud is not an element of the violation under §§ 551.41 and 551.58, STATS. We said, "We conclude that given the construction of the term 'wilfully' under the prior statute, that had the legislature wanted to require specific intent to defraud, it would have explicitly stated so." *Id.* at 530, 322 N.W.2d at 527.[4] Our reasoning in *Temby* also means that a

---

ing weight of existing case law reaches an opposite result." *Dumke*, 901 S.W.2d at 104. It could be argued that the wilfulness requirement in the penalties provision § 409 of the Uniform Act (our § 551.58, STATS.), should apply differently to different offenses under the Uniform Securities Act. *But see Ratzlaf*, 510 U.S. 135, —, 114 S.Ct. 655, 660 (1994), noting that when "wilfulness" in a single penalty provision applicable to various statutory violations should be construed "the same way each time it is called into play," citing *United States v. Aversa*, 984 F.2d 493, 498 (1st Cir. 1993), *vacated sub nom. Donovan v. United States*, — U.S. —, 114 S.Ct. 873 (1994), and remanded for further consideration in light of *Ratzlaf*, (the usefulness of a single penalty section for group of related code sections will otherwise be eviscerated). We need not enter the debate. The predicate acts charged against Mueller and Stopple are for securities fraud.

[4] The construction of wilfully under a prior statute occurred in *Boyd v. State*, 217 Wis. 149, 258 N.W. 330 (1935). The *Boyd* court construed § 189.23(2)(h), STATS., 1929, which contained criminal sanctions for "wilfully" violating or failing to comply with any of the provisions of ch. 189, STATS., 1929. The *Boyd* court said,

It was recently stated by this court in *Hobbins v. State*, 214 Wis. 496, 505, 253 N.W. 570, that "if one knowingly commits an act

defendant's knowledge or awareness of the facts giving
rise to a duty to disclose or of the legal duty to disclose,
is not an element of a criminal violation of § 541.41.[5]

> prohibited by a criminal statute he necessarily commits that act
> wilfully. He is not exempted from criminal responsibility because
> he considered the prohibition not wrongful. The legislature, in
> enacting the statute, determined the quality of the act in that
> respect." So here, as the defendant knowingly committed the acts
> charged as violations of the sections of the Blue Sky Law involved,
> his acts were done wilfully, and the intent he entertained when he
> committed the acts, other than an intent not to commit them,
> cannot excuse his violation of the statute. Where the legislature
> has prohibited, under a penalty, the doing of a specific act, "the
> doing of the inhibited act constitutes the crime, and . . . the only fact
> to be determined in these cases is whether the defendant did the
> act." (Citations omitted.) *Boyd*, 217 Wis. at 163, 258 N.W. at 335-
> 36.

[5] The dissent erroneously asserts that we later held in *State
v. Swift*, 173 Wis. 2d 870, 496 N.W.2d 713 (Ct. App. 1993), that
scienter is an element of § 551.41, STATS. In *Swift* we said

> One element of the offense of theft by fraud is that the defendant
> knowingly made false representations with the intent to defraud.
> *See* WIS J I—CRIMINAL 1453. Section 551.41, STATS., makes it
> unlawful to defraud a person in connection with the sale of any
> security making untrue statements of material fact or omitting a
> material fact.

*Id.* at 878, 496 N.W.2d at 716.

The appellant's brief in *Swift* discloses that the jury was
instructed that "fraud or deceit" in § 551.41(3), STATS., requires
that the defendant "knowingly made false representations . . . ."
APPENDICES AND BRIEFS, 173 Wis. 2d 870, 496 N.W.2d 713, Appel-
lant's Brief at 6, State Law Library. But whether scienter is
indeed an element of § 551.41(3) was not an issue and was not
briefed in the court of appeals. Moreover, neither the appel-
lant's brief nor the State's brief made any reference whatever to
the penalty provision in the Wisconsin version of the Uniform
Securities Law, § 551.58(1), STATS., and to its "wilful" element. A
statement by a court regarding an issue never briefed is not a
holding. *See Power Systems Analysis, Inc. v. City of Bloomer*,

The legislature's inaction after we decided *Temby* is some indication that we correctly construed the "wilful" element in § 551.58, STATS. Our construction of §§ 551.41(2) and 551.58, STATS., although by way of dictum, was important to commerce, to the bar and to the courts of this state.[6] And yet the legislature has not amended these sections to purge the force of our dictum. "[L]egislative inaction following judicial construction of a statute, while not conclusive, evinces legislative approval of the interpretation." *State v. Eichman*, 155 Wis. 2d 552, 566, 456 N.W.2d 143, 149 (1990).

To support their position that "wilfulness" in § 551.58, STATS., requires intent and knowledge in a securities fraud case, the defendants rely heavily on *State v. Collova*, 79 Wis. 2d 473, 255 N.W.2d 581 (1977). Because our *Temby* dictum is not binding precedent, we review defendants' contentions regarding *Collova*.[7]

The *Collova* court construed a statute which made it unlawful for a person to operate a motor vehicle during suspension or revocation of his operating privi-

197 Wis. 2d 817, 827, 541 N.W.2d 214, 218 (Ct. App. 1995) (judicial discussion of issues not raised or briefed on appeal is dicta). Thus, we did not hold in *State v. Swift* that to "knowingly make a false representation" is an element of § 551.41.

[6] Other state courts have found our *Temby* dictum persuasive. *See People v. Mitchell*, 437 N.W.2d 304, 308 (Mich. Ct. App. 1989); *State v. Larsen*, 865 P.2d 1355, 1358 (Utah 1993).

[7] In *Temby* we addressed the intent issue in the interests of judicial economy, having reversed and ordered a new trial on another issue. A decision on an issue unnecessary to a disposition is dictum. *State ex rel. Schultz v. Bruendl*, 168 Wis. 2d 101, 112, 483 N.W.2d 238, 241 (Ct. App. 1992).

137

lege before filing proof of financial responsibility or before obtaining a new license or reinstatement of the privilege. The required state of mind of the person was not an express element in the statute. The court nevertheless concluded that the statute required a "state of mind."[8]

The *Collova* court noted that strict criminal liability, i.e., liability regardless of the defendant's state of mind, has been held to attach to "acts [which] are in and of themselves not innocent acts. Persons who choose to engage in these kinds of unusual and dangerous activities may reasonably be held to the highest standards of care and precision, enforced by strict criminal liability, in conforming to government regulations." *Id.* at 484, 255 N.W.2d at 587. The relative innocence of the prohibited acts and severe penalties for violating the statute—both fine and imprisonment—led the *Collova* court to conclude that the legislature intended "some requirement of guilty knowledge as an element of the offense." *Id.* at 486, 255 N.W.2d at 587.

The *Collova* rationale does not apply here. Securities fraud is not a situation where, in the words of the *Collova* court, "[t]o inflict substantial punishment on a person who is innocent of any intentional or negligent wrongdoing offends the sense of justice and is ineffective." *Id.* at 486, 255 N.W.2d at 588. The person who violates § 551.41(2), STATS., by making any untrue statement of a material fact or by omitting to state a material fact is not innocent of wrongdoing. To make a false statement is wrongdoing, and "[a] statement con-

---

[8] The *Collova* court equated the issue of "state of mind" with "*mens rea,* criminal intent, guilty knowledge or scienter." *Id.* at 479, 255 N.W.2d at 584. We have avoided where possible the use of such terms as "mens rea" and "scienter."

taining a half-truth may be as misleading as a statement wholly false." RESTATEMENT (SECOND) OF TORTS, § 529 cmt. a (1977). In the latter case "concealment is equivalent to misrepresentation." *Strong v. Repide*, 213 U.S. 419, 430 (1909). Nor is a person innocent of wrongdoing when engaging in an act, practice or course of business which operates or would operate as a fraud or deceit upon any person, a violation of § 551.41(3). The actor is a cheat and should, without more, have guilty knowledge. It is unnecessary to make guilty knowledge an element of the offense.

The defendants refer to decisions under §§ 17 and 24 of the Securities Act of 1933, 15 U.S.C. §§ 77q(a) and 77x, as persuasive authority that proof of criminal intent is essential to a criminal conviction. They cite *U.S. v. Vasilios*, 598 F.2d 387 (5th Cir. 1979); *U.S. v. Henderson*, 446 F.2d 960 (8th Cir. 1971); *U.S. v. Boone*, 951 F.2d 1526 (9th Cir. 1991); *U.S. v. Vandersee*, 279 F.2d 176 (3d Cir. 1960); *U.S. v. United Medical & Surgical Supply Corp.*, 989 F.2d 1390 (4th Cir. 1993). Because §§ 77q(a) and 77x are similar to §§ 551.41(2) and (3),[9] and 551.58, STATS., defendants argue that the State must prove they intended to defraud. We disagree.

Section 77q(a) of the Securities Act provides in pertinent part:

77q(a).   It shall be unlawful for any person in the offer or sale of securities by the use of any means or instruments of transportation or communications in interstate commerce or by the use of the mails, directly or indirectly—

[9] The fraud provisions of the Uniform Securities Law were modeled after 15 U.S.C. § 77q(a). Uniform Securities Act § 101 cmt., 7B U.L.A. 516 (1985).

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

The penalties provision, § 77x of the Securities Act, provides in pertinent part:

77x. Any person who wilfully violates any of the provisions of this title [15 U.S.C. § 77a et seq.] . . . shall upon conviction be fined not more than $10,000 or imprisoned not more than five years, or both.

██

The drafters' comment to the Uniform Securities Act directs that we construe the term "wilfully" consistently with a provision in the Securities Exchange Act of 1934, not the Securities Act of 1933. Uniform Securities Act § 204, cmt. at 545, § 409 cmt. at 632. "As the federal courts and the SEC have construed the term 'willfully' in § 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b),[10] all that is required is proof that the person acted intentionally in the sense that he was aware of what he was doing." Uniform Securities

---

[10] Section 78o(b) authorizes the Securities Exchange Commission to suspend or revoke the registration of brokers or dealers who have wilfully violated federal securities laws.

Act § 264, cmt. at 545. The comment persuades us that defendants' position is not the law. We may consider the official and published comments of the drafters of a uniform law when determining the meaning of an ambiguous provision of that law. *Spatt v. Balson*, 183 Wis. 2d 31, 42, 515 N.W.2d 474, 478 (Ct. App. 1994), citing 2B NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION, § 52.05, at 225 (5th ed. 1992).

Moreover, other state courts have cited the drafters' comment when ruling that "scienter" is not required for violations of §§ 101 and 409 of the Uniform Securities Act (our §§ 551.41 and 551.58, STATS.). *Bayhi*, 629 So. 2d at 791; *Russell*, 291 A.2d at 586. As we have already noted, we are to construe ch. 551, STATS., "to make uniform the law of those states which enact the 'Uniform Securities Act' . . . ." Section 551.67, STATS.

Defendants urge that we reject the quoted comment because, according to the Alaska Supreme Court, the drafter of the Uniform Securities Act, Professor Loss, has "expressed substantial doubt as to whether the meaning of 'wilfully' for administrative enforcement purposes is the same as for purposes of criminal liability." *Hentzner*, 613 P.2d at 828. The pertinent portion of the Loss treatise the *Hentzner* court cited is as follows:

> It is conceivable, therefore, that "willfully" means something less in § 15(b) [15 U.S.C. § 78o(b)] than it does in the penal provisions of the SEC acts, and that it means something less when applied to a provision like § 5 of the Securities Act, which is *malum prohibitum*, than to one of the fraud provisions, which more nearly approach *mala in se*.
>
> At any rate, *the Commission has consistently held under § 15(b) that the term does not require*

*proof of evil motive, or intent to violate the law, or knowledge that the law was being violated.* (Emphasis added.)

2 LOUIS LOSS, SECURITIES REGULATION 1309 (2nd ed. 1961).

In his treatise, Professor Loss described the potentially varying meanings of "wilfully" within different federal securities laws, not the meaning of "wilfully" within the Uniform Securities Act. His conclusion that the Commission has consistently held under § 15(b) that the term does not require proof of evil motive, or intent to violate the law, or knowledge that the law was being violated, hardly contradicts the Uniform Securities Act comment directing that "wilfully" be construed in accordance with federal decisions to mean, "all that is required is proof that the person acted intentionally in the sense that he was aware of what he was doing."

Based on our review of the statute's context, history and purpose, we conclude that the wilfulness element in a security fraud prosecution does not require proof that the defendant acted with intent to defraud or knowledge that the law was violated.

## IV.

### WOCCA DOES NOT REQUIRE PROOF OF INTENT OR KNOWLEDGE BEYOND THAT REQUIRED FOR THE PREDICATE OFFENSES, IN THIS CASE SECURITIES FRAUD

Mueller and Stopple were charged and convicted under §§ 946.83(3) and 946.82(2), STATS., on one count of violating WOCCA by conducting or participating in an enterprise through a pattern of racketeering activity consisting of eighteen predicate offenses of security

fraud in violation of § 551.41(2) and (3), STATS. The pertinent WOCCA provisions are as follows:

Section 946.83(3), STATS., provides, "No person employed by, or associated with, any enterprise may conduct or participate, directly or indirectly, in the enterprise through a pattern of racketeering activity."

Section 946.82(3), STATS., defines "pattern of racketeering activity" as "engaging in at least 3 incidents of racketeering activity that have the same or similar intents, results, accomplices, victims or methods of commission or otherwise are interrelated by distinguishing characteristics. . . ."

Section 946.82(4), STATS., defines "racketeering activity" as "the attempt, conspiracy to commit, or commission of" specified predicate felonies, including § 551.41, STATS., the securities fraud statute.

Nothing in the pertinent WOCCA statutes establishes that intent or knowledge that an act is unlawful is an element of a WOCCA violation.[11] Because nothing in WOCCA suggests that such an element exists, we look to § 939.23(1), STATS. That statute provides,

> When criminal intent is an element of a crime in chs. 939 to 951, such intent is indicated by the term "intentionally", the phrase "with intent to", the phrase "with intent that", or some form of the verbs "know" or "believe".

Since none of the terms or verb forms listed in § 939.23(1) appear in the pertinent WOCCA statutes, it is unlikely that the legislature intended that criminal intent is an element of a WOCCA violation.

---

[11] Section 946.82(3), STATS., uses the phrase "the same or similar intents." We construe "intents" in that context to mean "an end or object proposed." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1176 (1993).

Finally, case law interpreting the federal Racketeer Influenced and Corrupt Organizations Act (RICO) is persuasive authority when we interpret WOCCA. *State v. O'Connell*, 179 Wis. 2d 598, 606, 508 N.W.2d 23, 26 (Ct. App. 1993); *State v. Evers*, 163 Wis. 2d 725, 732, 472 N.W.2d 828, 831 (Ct. App. 1991). Federal case law establishes that RICO does not require an element of intent or knowledge beyond that required to violate the predicate offense. "The *mens rea* element necessary for a substantive RICO conviction is the same as is required for the predicate crime . . . ." *United States v. Baker*, 63 F.3d 1478, 1493 (9th Cir. 1995), *cert. denied sub nom., Hale v. U.S.*, 116 S.Ct. 921 (1996), *citing United States v. Scotto*, 641 F.2d 47, 55-56 (2nd Cir. 1980), *cert. denied*, 452 U.S. 961 (1981). Other federal decisions are to the same effect. *United States v. Biasucci*, 786 F.2d 504, 512 (2nd Cir. 1986), *cert. denied*, 479 U.S. 827 (1986); *United States v. Pepe*, 747 F.2d 632, 675-76 (11th Cir. 1984); *United States v. Boylan*, 620 F.2d 359, 361-62 (2nd Cir. 1980), *cert. denied*, 449 U.S. 833 (1980). The defendants cite no federal RICO cases holding to the contrary.

Consistently with the federal case law, the notes to the pattern RICO jury instructions state

> The RICO statute itself contains no specific *mens rea* or mental state requirement beyond that called for in statutes outlawing the predicate act itself. Although the specific racketeering acts must be accompanied by the mental state required by the statute prohibiting that act, the RICO statute requires no other evidence of mental state to support a finding that a defendant engaged in a pattern of racketeering activity.

2 EDWARD J. DEVITT, CHARLES B. BLACKMAR, KEVIN F. O'MALLEY, FEDERAL JURY PRACTICE AND INSTRUCTIONS, CRIMINAL, § 48.03 at 703 (4th ed. 1990).

Similarly, the pattern instructions for a WOCCA violation do not include a separate intent element. *See* WIS J I—CRIMINAL 1883. We infer that the criminal jury instructions committee has concluded that an intent or knowledge that an act is unlawful is not an element of a WOCCA violation. The work of the criminal jury instructions committee can be persuasive, *State v. Schambow*, 176 Wis. 2d 286, 299, 500 N.W.2d 362, 367 (Ct. App. 1993), and here it buttresses our conclusion.

We conclude that WOCCA does not require proof of intent or knowledge beyond that required for the underlying predicate offenses.

## V.

## EVIDENCE SUSTAINING VERDICT

### A.   Notes As Securities

The defendants contend that the State failed to establish that the promissory notes FLS issued to its farm-auction customers were securities as defined in § 551.02(13)(a), STATS.[12] Defendants assert that because the record shows that FLS issued the notes to its customers as consideration for the purchase of their properties, the notes are not securities.

The trial court instructed the jury

---

[12] Section 551.02(13)(a), STATS., provides in relevant part:

"Security" means any . . . note . . . evidence of indebtedness; . . . investment contract; . . . or, in general, any interest or instrument commonly known as or having the incidents of a security or offered in the manner in which securities are offered . . . .

145

Security means any note, evidence of indebtedness, investment contract or, in general, any interest or instrument commonly known as or having the incidents of a security or offered in the manner in which securities are offered. Not all promissory notes are securities under Wisconsin law. You may consider this statute and any other evidence in this case in determining whether or not these notes constitute securities.

The instruction closely tracks the pertinent parts of the statute defining "security," § 551.02(13)(a). Neither the State nor the defendants objected to the instruction.

When we review the sufficiency of the evidence, we may not reverse a conviction unless the evidence, viewed most favorably to the State, is so insufficient in probative value and force that it can be said as a matter of law, that no trier of fact acting reasonably could have found guilt beyond a reasonable doubt. *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752, 755 (1990).

We review the evidence without relying on the State's argument that the jury could find that the FLS notes were securities on the basis of the factors established in *Reves v. Ernst & Young*, 494 U.S. 56 (1990).[13] The *Reves* court developed those factors to determine whether a note is a security as defined in the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10). But the case against Mueller and Stopple was not tried on the

---

[13] No Wisconsin case has directly interpreted the term "note" in § 551.02(13)(a), STATS. By way of dicta in *Fore Way Express, Inc. v. Bast*, 178 Wis. 2d 693, 705, 505 N.W.2d 408, 413 (Ct. App. 1993), we cited *Reves* as applicable when determining whether a note is a security.

basis of the *Reves* factors. Our review and analysis rest solely on the evidence the jury heard.

The defendants argue the jurors could not find, under the instructions to them, that the notes are securities. We disagree.

A prosecution witness from the Wisconsin Security Commissioner's Office testified that the definition of a security in § 551.02(13)(a), STATS., includes promissory notes. He agreed on cross-examination that what is a security under Wisconsin law is often debatable and that a court frequently must interpret the law to determine whether a particular instrument is a security. The State offered no other testimony directly touching the question whether the FLS notes are securities.

However, the defense produced such testimony by an attorney who specializes in securities law. He testified that all notes are presumed to be securities and that in determining whether a note is a security four factors are taken into account: whether the note is offered to raise capital, as opposed to being issued to facilitate a commercial transaction; whether the note was issued in an isolated commercial transaction; whether the note was issued as an investment opportunity; and whether the note is accompanied by a risk-reducing factor such as being insured, as opposed to being uninsured, unsecured and uncollateralized.

The jury was entitled on the basis of the attorney's testimony and their instructions to find that the FLS notes are securities. First, the record shows that FLS offered the notes to raise capital. The defendants wrote to FLS employees, stating

> For many years the installment sale program has been an excellent source of financing the lending operations of Farm Loan Service. . . . We are eager

> at this time to increase this source of funds within
> our corporate structure, thus reducing our reliance
> on the commercial banking system. . . .

> In order to facilitate the raising of new capital for
> our operation, we are instituting an incentive pro-
> gram for those direct employees of Farm Loan
> Service who are able to generate non-guaranteed
> installment sales for the company.

The jury could infer that the notes were issued as part of a marketing program, and were not isolated commercial transactions. FLS issued the notes in single transactions with its farm-auction customers, but from 1981 to 1985 the defendants sold forty-six notes and paid off twenty-one. As of 1985 an additional thirty-five notes were outstanding that had been sold before 1981. When FLS filed bankruptcy, some sixty to seventy farmers holding outstanding notes totaling $1.5 million were unsecured creditors of FLS. At one time the outstanding notes totaled about $3.5 million.

The jury heard evidence that defendants offered the notes to its farm-auction customers as investment opportunities. FLS used a standard letter to farmers stating that it had available "an opportunity to invest in our company" at a "very competitive interest rate." FLS regularly used the letter beginning before 1983, according to defendant Mueller. The record contains many examples of noteholders who were advised that the notes would earn a higher rate of interest than was available at a bank, or through a money market account.

Finally, because the jury heard other evidence that the notes were unsecured by any form of collateral and were uninsured, the jurors could reasonably conclude that the notes were unaccompanied by a risk-reducing factor.

148

### B. Transfer of Worthless Assets to FLS in Fraud of Noteholders

Count 18 in the information alleged as a separate predicate crime under WOCCA, that on or about April 30, 1985, the defendants transferred substantially worthless accounts and notes receivable to FLS in exchange for the elimination of a debt in the same amount owed by FLS to DAS. The information alleges the transfer operated as a fraud or deceit on named noteholders, contrary to §§ 551.41(3) and 551.58, STATS.

The defendants do not seriously contest the State's position that the assets transferred to FLS were substantially worthless. They assert, however, that the State failed to prove that the value of the DAS debt FLS cancelled was greater than the value of the receivables DAS transferred to FLS. Since the State put in no direct evidence going to the value of the DAS debt to FLS, defendants argue that the jury could only speculate regarding the comparative values in the exchange between FLS and DAS. For that reason, defendants argue, a fraud under § 551.41(3), STATS., was not proved. We reject the argument.

A former FLS bookkeeper testified that in March 1985 the FLS books showed DAS's debt to FLS was $1,541,833.36. In April 1985 she made the accounting entries reflecting the transfer by DAS of notes and accounts having an ostensible value of $1,320,868 to FLS in the exchange. Because the jury heard testimony that the assets DAS transferred to FLS were substantially worthless, the jury was entitled to infer that those assets were substantially less valuable than DAS's debt to FLS, and therefore the State proved a fraud under § 541.41(3), STATS.

149

## VI.

## CONCLUSION

We recapitulate. The prosecution is not barred by the statute of limitations. The State did not have to prove defendants acted with intent to defraud or to knowingly violate the law. WOCCA does not require proof of knowledge or intent beyond that required for the predicate acts that constitute racketeering. Sufficient evidence existed for the jury to find that the FLS notes were securities and that defendants replaced corporate assets with substantially less valuable assets. We affirm the judgments of conviction.

*By the Court.*—Judgments affirmed.

SUNDBY, J. (*dissenting*). Each defendant is subject to fines of $90,000 and imprisonment for ninety years. Such severe sanctions may not be imposed on innocent but negligent defendants. *See State v. Collova,* 79 Wis. 2d 473, 486, 255 N.W.2d 581, 587-88 (1977). I dissent.

Defendants were convicted of racketeering for issuing promissory notes through misrepresentation and fraud, in violation of § 551.41(2) and (3), STATS. For purposes of deciding whether the trial court correctly instructed the jury, we must assume that any misrepresentations or omissions defendants made to induce purchasers to accept the notes were innocent, although negligent. We propose to hold that the trial court correctly instructed the jury that it could find defendants guilty even though they acted innocently. This cannot be the law.

Over defendants' objection, the trial court instructed the jury:

150

> Wilful . . . means only that the defendant knowingly committed the act charged. Wilful does not mean that the defendant had an intent to defraud or that the defendant had knowledge that the law was being violated.

I understand and accept that I may be guilty of a crime if I injure someone by my criminal negligence. Section 939.25(1), STATS., provides: " '[C]riminal negligence' means ordinary negligence to a high degree, consisting of conduct which the actor should realize creates a substantial and unreasonable risk of death or great bodily harm to another." There is nothing unconstitutional about punishing negligent conduct which the actor should realize creates a substantial and unreasonable risk of death or great bodily harm to another. *See State v. Barman*, 183 Wis. 2d 180, 196-200, 515 N.W.2d 493, 501-02 (Ct. App. 1994). The key to constitutionality of reckless behavior statutes is that the actor "should realize" that his or her conduct is unlawful. However, we propose to allow the jury to find the defendants in this case guilty of crimes because their conduct, viewed retrospectively, may have been negligent.

Section 551.58(1), STATS., provides in part: "Any person who *wilfully*[1] violates any provision of this chapter . . . may be fined not more than $5,000 or imprisoned not more than 5 years or both." (Emphasis added.) Defendants were convicted of eighteen predicate acts.

Section 551.41, STATS., provides in part:

---

[1] In some of the statutes cited and in some of the decisions, "wilful" is spelled "willful." I will use "wilful" throughout.

It is unlawful for any person, in connection with the offer, sale or purchase of any security in this state, directly or indirectly:

. . . .

(2)  To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(3)  To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

" '[Wilful]' . . . is a 'word of many meanings,' and 'its construction [is] often . . . influenced by its context.' " *Ratzlaf v. United States*, 114 S. Ct. 655, 659 (1994) (quoting *Spies v. United States*, 317 U.S. 492, 497 (1943)).

The seminal case in Wisconsin construing the word "wilful" is *State v. Preston*, 34 Wis. 675, 683-85 (1874). According to the Wisconsin Supreme Court, *Preston* continues to be "a leading authority on the nuances of the word, 'wilful.' " *Department of Transp. v. Transportation Comm'n*, 111 Wis. 2d 80, 88-89, 330 N.W.2d 159, 163 (1983). *Preston* points out that "the word is pregnant with ambiguity, and that its meaning varies in accordance with its context." *Id.* In *Preston,* the court said:

The word [*wilfully*], as used to denote the intent with which an act is done, is undoubtedly susceptible of different shades of meaning or degrees of intensity according to the context and evident purpose of the writer. It is sometimes so modified and reduced as to mean little more than plain *intentionally*, or *designedly. Such is not, however, its ordinary signification when used in criminal law*

*and penal statutes*. It is there most frequently understood, not in so mild a sense, but as conveying the idea of legal malice in greater or less degree, that is, as implying an evil intent without justifiable excuse.

34 Wis. at 683-84 (emphasis added). The court said that the "fullest and most satisfactory discussion" it had found of the word "[wilfully]" was in *United States v. Three Railroad Cars*, 1 Abbott's U.S. Rep. 196, where the court, in differentiating between the words "knowingly," "[wilfully]" and "maliciously," as used in criminal and penal statutes, said:

The first of these words does not, in common parlance, or in legal construction, necessarily and *per se* imply a wicked purpose or perverse disposition, or indeed any evil or improper motive, intent or feeling; but the second is ordinarily used in a bad sense to express something of that kind, or to characterize an act done wantonly, or one which a man of reasonable knowledge and ability must know to be contrary to his duty.

34 Wis. at 685.

Sections 551.41 and 551.58, STATS., are set in the context of subch. IV of ch. 551, entitled "Fraudulent Practices." While the title of a subchapter or subdivision of a statute is not part of the law, it may be indicative of legislative intent. *See Pulsfus Poultry Farms, Inc. v. Town of Leeds*, 149 Wis. 2d 797, 805-06, 440 N.W.2d 329, 333 (1989). Plainly, the purpose of subch. IV is to proscribe fraudulent practices. "A statement . . . is 'fraudulent' if it was falsely made . . . *with the intent to deceive*." BLACK'S LAW DICTIONARY 662 (6th ed. 1990) (emphasis added).

153

Where a statute makes fraud unlawful, the Criminal Jury Instruction requires "scienter," or knowledge that the act is unlawful. *See* WIS J I—CRIMINAL 1850 (welfare fraud: making false representations); WIS J I—CRIMINAL 1852 (welfare fraud: failure to report income or assets); WIS J I—CRIMINAL 1854 (welfare fraud: failure to notify authorities of change of facts); and WIS J I—CRIMINAL 1862 (food stamp fraud: misstating facts). Even where the statute does not use the term "wilful" or "intentional" or "knowingly," the Criminal Jury Instructions Committee has concluded that a statute which proscribes fraud requires that the State prove an intent to violate the law. *See* WIS J I—CRIMINAL 1852, Comment 4; WIS J I—CRIMINAL 1854, Comment 3.

The majority relies on *State v. Temby*, 108 Wis. 2d 521, 528-30, 322 N.W.2d 522, 526-27 (Ct. App. 1982), where we stated that intent to defraud is not an element of a violation of §§ 551.41 and 551.58, STATS. However, that statement is *gratis dictum*. We are bound by our holding in the later case of *State v. Swift*, 173 Wis. 2d 870, 878, 496 N.W.2d 713, 716 (Ct. App. 1993), where we held:

> One element of the offense of theft by securities fraud is that the defendant knowingly made false representations with the intent to defraud. *See* Wis J I—Criminal 1453. Section 551.41, STATS., makes it unlawful to defraud a person in connection with the sale of any security by making untrue statements of material fact or omitting a material fact.

The majority rejects our holding in *Swift* because the issue of scienter was not briefed. The clear reason is that it never occurred to the State that a defendant could innocently defraud another. I have found no case in Wisconsin criminal jurisprudence in which "wilful"

has been construed to permit the conviction of a defendant who had no knowledge that his or her act was unlawful and had no intent to commit an unlawful act.

In *Temby*, the court in announcing its *gratis dictum* erroneously relied on *Aaron v. Securities and Exchange Comm'n*, 446 U.S. 680 (1980), which was not a criminal action but a civil enforcement action. The *Aaron* Court construed § 17(a) of the Securities Act of 1933, which is virtually identical to § 551.41, STATS. It concluded that Congress required scienter to find a violation of § 17(a)(1) [§ 551.41(1)] because it used the words "device," "scheme," and "artifice." 446 U.S. at 695-96. The Court concluded, however, that Congress did not intend to require scienter to find a violation of § 17(a)(2) or 17(a)(3) [§ 551.41(2) and (3) ]. 446 U.S. at 696-97. *Aaron* is therefore persuasive in construing § 551.59, STATS., which provides for *civil* enforcement of § 551.41, but not in construing § 551.58, STATS.

The legislative history of the Securities Act of 1933 clearly shows that Congress understood that scienter would be required to convict a person of a criminal offense of making a false representation in a securities transaction. When questioned about civil liability, one of the drafters of the 1933 Act stated: "*Criminal liability is based only on knowingly making a false statement*. But civil liability exists even in the case of an innocent mistake. . . ." Statement of Judge Alexander Holtzoff, then Special Assistant to the Attorney General, Securities Act, Hearings on 875, Senate Committee on Banking and Currency, 73d Congress, 1st Sess., 207 (1933), *quoted in Aaron*, 446 U.S. at 716 n.7 (Blackmun, J., concurring in part and dissenting in part) (emphasis added).

I suggest we be guided not only by *Swift,* where the court considered the law self-evident, but by *Ratzlaf.*

The *Ratzlaf* Court did not construe securities law but a distant cousin, the Bank Secrecy Act (31 U.S.C. §§ 5311-5322). The Act requires banks and other financial institutions to report to the Secretary of the Treasury cash transactions exceeding $10,000, and prohibits a person from "wilfully" evading the reporting requirement by breaking up a single transaction into smaller transactions. Ratzlaf was indicted by a grand jury for structuring a $100,000 cash payment to a Nevada casino through a series of cashier's checks, each of which was for less than $10,000. He was convicted after the district court instructed the jury that the Government did not have to prove that Ratzlaf knew he was violating the anti-structuring law. 114 S. Ct. at 657. The Supreme Court reversed, concluding that because the Act proscribed "wilful" conduct, the Government had to prove that Ratzlaf acted with knowledge that his act was unlawful.

*Ratzlaf* establishes that where a statute proscribes "wilful" conduct, the Government must prove not only that the defendant knew what he was doing but knew that his or her act was unlawful. The Court noted that federal courts had consistently construed "wilfulness" as used in related statutes to require a purpose to disobey the law. *Id.* at 656. Wisconsin appellate courts have consistently construed "wilful" to require guilty intent. *See, e.g., Collova*, 79 Wis. 2d at 486, 255 N.W.2d at 587-88.

The *Ratzlaf* Court found it unnecessary to resort to legislative history because the statutory text was clear. 114 S. Ct. at 662. However, if it had found that the word "wilful" was ambiguous, the Court would have resolved any doubts in favor of the defendant, under the rule that "lenity principles 'demand resolution of ambiguities in criminal statutes in favor of the defendant.' " *Id.*

at 662-63 (quoting *Hughey v. United States*, 495 U.S. 411, 422 (1990)). Wisconsin follows the same rule. *See State v. Frey*, 178 Wis. 2d 729, 745, 505 N.W.2d 786, 792-93 (Ct. App. 1993).

A properly instructed jury may have found that defendants made false representations as to material facts and concealed material facts from those to whom they transferred securities, knowing that their acts violated § 551.41(2) and (3), STATS. The jury was not permitted to decide whether defendants were charlatans or merely optimists. The jury was instructed that they were not to find whether defendants committed an unlawful act but simply whether they did the act. Under that incorrect instruction, defendants had no defense. However, the jury could have found that defendants, in good faith, believed that Farm Loan Services could redeem its unsecured notes upon maturity, even though the company had financial problems.

It is clear from *Ratzlaf* and *Department of Transp. v. Transportation Comm'n* that the legislative body may choose to regulate an industry or activity by imposing both civil and penal sanctions. In the latter case, the court construed the statute regulating finance companies, auto dealers, adjustment companies and collection agencies. The State charged an automobile dealership, its president and its sales manager with violating a statute which made unlawful the wilful failure to perform a written agreement with a buyer. 111 Wis. 2d at 83, 330 N.W.2d at 160. Doucas Oldsmobile discovered an error in its agreement to sell an automobile. The buyer refused to pay the increased price which Doucas insisted on. The parties agreed that the omission was a good-faith mistake. *Id.* at 85, 330 N.W.2d at 161. The transportation commission sought to enjoin Doucas Oldsmobile from future violations of

the statute. Doucas argued that the statute required a finding that its acts were made with evil intent, malice or without justifiable excuse. *Id.* at 87, 330 N.W.2d at 162. The court held that because this was a regulatory, non-penal statute, strict construction was inappropriate. *Id.* at 92, 330 N.W.2d at 164. However, the court made clear that if the statute had been penal, it would have construed "wilful" strictly, thereby requiring an evil or malicious intent. *Id.* at 90, 330 N.W.2d at 163. *Department of Transp. v. Transportation Comm'n* is especially instructive because the court construed the principal case relied on by defendants—*State v. Collova*—in the context of regulatory statutes not greatly dissimilar from those involved in this case. In *Collova*, the court held that defendant could not be convicted of operating a motor vehicle after revocation without proof that the operator knew that his driver's license might have been revoked or suspended. *Department of Transp.*, 111 Wis. 2d at 101, 330 N.W.2d at 168 (citing *Collova*, 79 Wis. 2d at 487, 255 N.W.2d at 588). The court pointed out that in *Collova* the sanctions were relatively severe while the penalties for violating the automobile dealership regulations were, by comparison, nominal. *Id.* The court concluded: "No element of malicious or evil intent is required by either the statute itself or the rationale utilized in *Collova* which compels the element of *mens rea* in respect to offenses which carry substantial and mandatory penal sanctions." *Id.* at 102, 330 N.W.2d at 169.

The *Collova* court expressed succinctly my view of this case: "To inflict substantial punishment on a person who is innocent of any intentional or negligent wrongdoing offends the sense of justice and is ineffective." 79 Wis. 2d at 486, 255 N.W.2d at 588. The majority concludes that the *Collova* rationale does not

apply because any person who makes an untrue statement of a material fact or omits to state a material fact "is not innocent of wrongdoing." Majority op. at 138. This is a tragic misstatement not only of the law but of human experience. I may in good faith tell my wife I will be home for dinner at 6:30 p.m. but miss the 5:55 bus. My statement was untrue but I do not believe my wife would find me guilty of wrongdoing. In *Reda v. Sincaban*, 145 Wis. 2d 266, 426 N.W.2d 100 (Ct. App. 1988), a real estate agent innocently misrepresented the size of a lot. We refused to allow the real estate agent to incorporate intentional deceit into his strict responsibility for his misrepresentation. *Id*. at 271, 426 N.W.2d at 103. We said that as between innocent parties, the person having the means of determining the pertinent facts is strictly responsible for his or her representations, irrespective of knowledge or negligence. *Id*. at 269, 426 N.W.2d at 102. The securities laws make defendants strictly responsible for their misrepresentations in a civil action. However, to make them liable for criminal penalties of $90,000 and ninety years' imprisonment offends my sense of justice.

The majority invades the province of the jury when it concludes that defendants are cheaters and "should, without more, have guilty knowledge." Majority op. at 139. I agree with the majority that a cheater is engaged in wrongdoing. However, a "cheater" is a swindler: "[A] person who acts dishonestly, deceives, or defrauds: *He is a cheat and a liar*." THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 351 (2d ed. 1987). Typical synonyms are: "swindler, trickster, sharper, dodger, charlatan, fraud, fake, phony, mountebank." *Id*. In this case, the State presents a strong case of guilty knowledge. It is tempting to conclude: "Oh well, the jury would probably have found defendants guilty anyway."

The next case may, however, be different. The jury instruction which the trial court gave will become the law as to the meaning of "wilful." Numerous jury instructions will have to be rewritten to reflect that the word "wilful" as used in criminal statutes no longer requires that defendant have knowledge that he or she was violating the law. The consequences of our decision are frightening. I therefore dissent.